815 So.2d 412 (2002)
STATE of Louisiana, Appellee,
v.
Archester SMITH, Appellant.
No. 35,699-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2002.
Rehearing Denied May 2, 2002.
*413 Amy C. Ellender, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Hugo A. Holland, Jr., Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
*414 CARAWAY, J.
Defendant was convicted by a jury on charges of forcible rape of his step-daughter and molestation of a juvenile. Additionally, defendant was acquitted on the charges of aggravated rape and molestation of a juvenile of his two, younger daughters. On appeal, defendant complains of several trial court errors and urges our reversal of his convictions and sentences. For the reasons stated below, we affirm defendant's conviction and sentence for molestation of a juvenile, but reverse and set aside his conviction of forcible rape.

Procedural History
Defendant, Archester Smith ("Smith"), was charged by grand jury indictment with Aggravated Rape of the child, S.F., a violation of La. R.S. 14:42(A)(4). On August 8, 2000, the District Attorney ("DA"), without the approval of the grand jury, amended the indictment to include three additional counts; one count of Molestation of a Juvenile pertaining to the victim, S.F., a violation of La. R.S. 14:81.2(A)(C); a second count of Aggravated Rape against a second victim, C.S., which allegedly occurred in 1995; and a third count of Aggravated Rape against a third victim, K.S., in 1997. Smith filed a motion to quash the amended bill of indictment on grounds that the DA could not amend the indictment to include two new Aggravated Rape charges which were allegedly committed against C.S. and K.S. Following a hearing on the motion to quash, the trial court denied Smith's motion.
Smith was tried by a jury beginning on December 11, 2000. As to count one, the Aggravated Rape of S.F., the jury returned a responsive verdict of guilty of Forcible Rape, a violation of La. R.S. 14:42.1. As to count two, Molestation of a Juvenile, S.F., the jury returned a verdict of guilty as charged. As to the counts of Aggravated Rape against C.S. and K.S., the jury returned verdicts of not guilty on both counts. Smith filed a motion for post-judgment verdict of acquittal, which the trial court denied. On January 16, 2001, Smith was sentenced to 15 years at hard labor, with 2 years to be served without benefit of parole, probation or suspension of sentence for the forcible rape conviction. Smith was also sentenced to 5 years at hard labor, with 1 year to be served without benefits, for the molestation conviction. The trial court ordered defendant's sentences to be served concurrently. After the state filed a motion to reconsider sentence, the trial court amended Smith's sentence to 20 years at hard labor on the forcible rape offense, with the first 2 years to be served without benefits. The trial court did not amend the sentence on the molestation of a juvenile offense. Again, the trial court directed that Smith's sentences run concurrently. Smith then filed a motion to reconsider sentence, which the trial court denied.
Smith appeals, asserting several assignments of error.

Facts and Trial Testimony
Smith began a romantic relationship with Dorthea F. ("Dorthea") in August 1984. Dorthea had a two-year-old daughter, S.F., when she met Smith. Dorthea and Smith subsequently married, and two children were born during the marriage, C.S., born in 1993, and K.S., born in 1995. Although Dorthea and Smith were still married at the time of his December 2000 trial, the parties separated in the mid 1990's.
On October 13, 1995, S.F., then age 13 years and 6 months, was taken to LSU Medical Center ("LSUMC") in Shreveport complaining of cramps and vaginal bleeding. The examination revealed that S.F. was pregnant, but had an abnormal intrauterine *415 pregnancy, i.e., no embryo was present in the gestational sac. S.F. claimed that defendant, "Chester," began sexually molesting her by touching her genital area when she was six years old; S.F. further claimed that the molestation ultimately led to sexual intercourse when she was ten or eleven years of age. S.F. also claimed that Smith was the person who impregnated her.
S.F. testified that when she was six years old, Smith began touching her in places where she did not want to be touched. When asked to clarify her statement, she explained that Smith touched her vagina. She claimed that generally, Smith would sexually abuse her in the bathroom or bedroom, once or twice per week, when her mother was not home. S.F. stated that when Smith would sexually abuse her, he would say things like, "it's what daddy is supposed to do to their daughters" and "don't tell your momma." She further testified that the molestation intensified when she was in junior high school, and that sexual intercourse began when she was 10 or 11 years old.
S.F. stated that she did not report the sexual abuse to her mother, because her mother failed to intervene when, at the age of 6, she previously reported the abuse. S.F. also claimed that Smith told her the reason her mother did not do anything when she previously reported the abuse, was because he was doing "what a daddy is supposed to do."
S.F. further testified that on October 13, 1995, while asleep at her aunt's house, she woke when her stomach began to cramp. She then went into the bathroom, where she noticed heavy vaginal bleeding. S.F. then began to cry aloud because of the pain. Her aunt, Angela F., heard her cries and tried to assist. S.F.'s mother was called to take the child to the hospital. Once at the hospital, examinations were conducted which concluded that S.F. was pregnant. S.F. reported to her mother, the doctor, and child services that "Chester," the defendant, was the person who impregnated her.
Dr. John Dawson Haynes ("Dr.Haynes") testified that on October 13, 1995, he examined S.F. when she was brought into LSUMC. He stated that S.F. complained of vaginal bleeding and stomach cramps. An examination was performed, as well as a pregnancy test, which proved that the victim was pregnant. Dr. Haynes ordered an ultrasound, which established that S.F. had an intrauterine gestational sac; however, no embryo was present. Dr. Haynes further stated that S.F. had either miscarried or would soon miscarry. When Dr. Haynes questioned S.F. about whether she was sexually active, S.F. told him that she was not. After Dr. Haynes told her that the pregnancy results were positive, she admitted to a sexual relationship with her stepfather, Smith. Furthermore, Dr. Haynes opined that a DNA test of the tripoblastic tissue present in the early stages of an abnormal pregnancy, such as the one herein, would be very unreliable. In fact, Dr. Haynes testified that S.F. was, at most, only three to five weeks pregnant upon her arrival at LSUMC. Dr. Haynes reported this information, as required by law, to Child Protective Services.
The victim's mother, Dorthea, testified that when S.F. was seven years old, she reported that her stepfather, Smith, touched her "private part" while she was taking a bath. Dorthea stated that when she questioned defendant about this, he claimed he was simply teaching S.F. how to bathe. This was the first time S.F. made sexual abuse allegations against defendant. Dorthea further testified that on October 13, 1995 while at the hospital, and after learning of the results of the pregnancy test, S.F. blurted out, "momma it's *416 Chester." Dorthea testified that at the hospital, S.F. appeared nervous and scared. Dorthea also stated that Smith later admitted that he had sex with S.F. during a conversation at his home; however, Smith denied that he was the person who got S.F. pregnant.
Additionally, at trial, numerous other family members and social workers testified that S.F. reported to them that Smith was the person who impregnated her. S.F.'s claim that Smith repeatedly sexually abused her from the time she was six years old remained consistent throughout the testimony from each of the state's witnesses.
The State also presented evidence throughout its case-in-chief regarding the alleged aggravated rapes of S.F.'s younger sisters, C.S. and K.S. The State's main evidence on these offenses was presented through the testimony of various OCS workers, Dr. Ann Springer, and K.S.'s counselor, Lisa Chilvers.

Discussion

Sufficiency of the Evidence
By this assignment, Smith contends that the evidence presented at trial was insufficient to support his convictions of forcible rape and molestation of a juvenile. He argues that he did not molest or have sexual intercourse with his stepdaughter, S.F. Smith further states that the testimony of one individual alone, in this case, S.F., should not be sufficient to convict him of such a serious offense. Moreover, the defendant cites the lack of DNA evidence, and asserts that there was no other medical evidence to support his identity as the molester and rapist.
To obtain a conviction of forcible rape, the state must prove all elements listed in the statute. The underlying elements of a forcible rape, as applicable to this case, are found in La. R.S. 14:41 and La. R.S. 14:42.1. Rape is defined in La. R.S. 14:41, as follows:
The act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent, and any sexual penetration, however slight, is sufficient to complete the crime.
The offense of forcible rape is defined in La. R.S. 14:42.1, which provides, in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

* * *
The offense of molestation of juvenile is defined in La. R.S. 14:81.2, which provides in part:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
*417 Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier-of-fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 34,383 (La.App.2d Cir.2/28/01), 780 So.2d 1213; State v. White, 28,095 (La.App.2d Cir.5/8/96) 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the direct evidence is viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier-of-fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Robinson, supra; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Louisiana Code of Criminal Procedure Article 821(B) provides:
A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
Article 821 adopts the Jackson standard as the proper degree of deference which both trial and appellate courts owe to the jury's verdict. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When, as here, the appellate court is reviewing the evidence for sufficiency to convict, the court must accept the factfinder's credibility calls and inferences drawn from conflicting evidence, when those determinations are reasonably supported by the record. The court is not to second guess the fact-finder's resolution of the factual conflicts, but consider only whether the evidence deemed credible by the jury is legally sufficient to establish each essential element of the offense beyond a reasonable doubt. State v. Bosley, supra; State v. Taylor, 34,096 (La.App.2d Cir 12/15/00), 774 So.2d 379, writ denied, XXXX-XXXX (La.12/14/01), 803 So.2d 984; State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
The Louisiana Supreme Court has held that the testimony of the victim and the investigating officer in a rape case is sufficient to convince a reasonable factfinder beyond a reasonable doubt of a defendant's guilt. State v. Rives, 407 So.2d 1195 (La.1981). In the present case, according to the victim's testimony, Smith began sexually molesting her by touching her genitalia when she was merely six *418 years old, which ultimately led to sexual intercourse when S.F. was ten or eleven. The medical evidence of her physical condition established that sexual intercourse occurred during her thirteenth year. The evidence circumstantially indicated that sexual intercourse could have also occurred prior to S.F.'s twelfth birthday, thus corroborating her testimony. Furthermore, the record includes testimony from S.F.'s mother, her grandmother, her two aunts, two social workers, and a physician, all of whom corroborate the victim's allegations of rape and/or molestation.
Smith cites the lack of DNA evidence, and asserts that there was no other medical evidence to support his identity as the molester and rapist. Dr. Haynes, S.F.'s physician on October 13, 1995, testified that since S.F.'s pregnancy was abnormal, there was no tissue/embryo available to test for DNA. Contrary to Smith's argument, we find that the lack of DNA evidence in this case does not controvert the rest of the state's testimony and direct evidence.
In summary, the evidence and testimony presented shows that Smith did, in fact, engage in acts of sexual intercourse with his step-daughter, S.F. Smith's sole defense was his claim that he did not have sexual relations with the victim. However, with the evidence presented through S.F.'s testimony, as well as the testimony of other witnesses, the jury deemed the testimony and evidence credible and determined that Smith committed the crimes of forcible rape and molestation of a juvenile.
Viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found beyond a reasonable doubt that the defendant was guilty of the charged offenses. Thus, Smith's assignment of error is without merit.

Motion to Quash and Other Evidentiary Issues
Smith's next two arguments will be discussed jointly, as they are interrelated. First, Smith complains that the trial court erred in failing to quash the DA's amended indictment. Specifically, defendant claims that the DA did not have the authority to amend the indictment, because the amendment included new charges of aggravated rape which involved different victims. Also, defendant complains that the indictments included charges of aggravated rape that allegedly occurred at significantly different times subsequent to the time of the charges he faced for the molestation and rape of S.F. Smith maintains that although he was acquitted on the two additional aggravated rape charges, he was significantly prejudiced by the evidence of these other crimes.
La.C.Cr.P. art. 382(A) provides that a prosecution of an offense punishable by death or life imprisonment shall be instituted by grand jury indictment. Aggravated rape is punishable by life imprisonment. La. R.S. 14:42. Therefore, the prosecution for the aggravated rape of C.S. and K.S. should have been instituted by a grand jury indictment, and defendant's motion to quash was improperly denied. Additionally, we note that the jurisprudence concerning the amendment of an indictment does not support the actions of the DA in this case. State v. Roberts, 319 So.2d 317 (La.1975), reversed on other grounds, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974, rehearing denied, 429 U.S. 890, 97 S.Ct. 248, 50 L.Ed.2d 173 (1976); State v. Smith, XXXX-XXXX (La.App. 1st Cir.2/15/02), 809 So.2d 556; State v. Osborne, 593 So.2d 888 (La.App. 2d Cir.1992), writ denied, 93-0781 (La.4/21/95), 653 So.2d 557. The crimes charged against Smith regarding his actions toward C.S. and K.S. were clearly new and different *419 crimes requiring separate indictments. See generally, State v. Bluain, 315 So.2d 749 (La.1975).
The trial court error in failing to quash the prosecution of these other crimes requires us to determine whether this "other crimes" evidence prejudiced the defendant. See La. C.E. art. 404(B)(1).[1] Given this error, we also note that a pretrial Prieur hearing pursuant to La.C.Cr.P. art. 720 and La. C.E. art. 1104 was not conducted so that the evidence of other crimes could be considered by the trial court and measured under the balancing test provided in La. C.E. art. 403.[2] Evidence of the alleged crimes against C.S. and K.S. was discussed throughout the trial in the testimony of almost all of the state's witnesses, and we will review that evidence for consideration of Smith's claim for prejudice.
Dr. Ann Springer ("Dr. Springer") examined C.S. and K.S. on three separate occasions, at the Office of Child Services' ("OSC") request. Dr. Springer's colposcopic examination of C.S. on November 7, 1995, revealed that C.S.'s hymen was abnormal, i.e., her hymen was "attenuated and distorted." Dr. Springer's diagnosis was that C.S. had been sexually molested and penetrated. Dr. Springer also testified that C.S.'s injuries would have caused the child pain, and that a child C.S.'s age (C.S. was almost 3 years old at the time of the first exam), would not have the strength to self-inflict the injuries viewed on exam.
Dr. Springer further examined C.S. and K.S. in the summer of 1999. Regarding C.S., the colposcopic exam noted no discharge or bleeding, but C.S. had diffuse swelling of the vulva and tissue surrounding her vagina. Dr. Springer testified that the type of swelling revealed during C.S.'s exam is sometimes seen when there is a blunt force trauma to the genital area; furthermore, Dr. Springer opined that attempted penile penetration causes this type of blunt force trauma. Upon K.S.'s exam, Dr. Springer found that a section of K.S.'s hymen was absent, but that the area had healed. At the time of the 1999 medical exam, K.S. was 4 years old. Dr. Springer also noticed petechia (a.k.a., micro-hemorrhage) around K.S.'s vulva and vagina. Dr. Springer opined that this type of injury commonly results from blunt force trauma. K.S.'s anal exam revealed much more damage. According to Dr. Springer, K.S.'s anal exam showed loss of rugel symmetry and fissuring. K.S. also had a healed peri-anal scar, which Dr. Springer termed as "significant." Again, Dr. Springer testified that K.S. did not inflict these injuries upon herself, and that the injuries K.S. sustained were very painful. Dr. Springer could not identify with specificity what type of object caused the girls' injuries, but speculated that the injuries were not caused by an object the size *420 of an ink pen; rather, she stated that the girls' injuries were characteristic with an attempt of penile penetration.
The State also called Lisa Chilvers ("Chilvers") as a witness. The trial court held a hearing out of the jury's presence, to determine whether K.S. was "unavailable" for live testimony pursuant to Folse v. Folse, 98-1976 (La.6/29/99), 738 So.2d 1040 and La. C.E. art. 804. The defense objected to the hearing, as well as the State's attempt to get K.S.'s hearsay statements before the jury by way of Chilvers testimony. The trial court ruled that K.S. was "unavailable" according to Folse, supra and La. C.E. art. 804, and allowed Chilvers to testify regarding the out-of-court statements made to her during counseling sessions with K.S.
Chilvers conducted therapeutic interviews for OCS. She began counseling the girls in 1998. Chilvers stated that based on the medical reports OCS gave her, she believed that both C.S. and K.S. were molested. When Chilvers first saw C.S. and K.S., there was no indication that either of them admitted to the abuse. In fact, C.S. and K.S. denied abuse to the OCS investigators. On February 3, 2000, K.S. admitted that her "dad," Smith, gave her a "bad touch." K.S. indicated to Chilvers that Smith touched her near her genital area. K.S. also admitted that she touched her dad in the genital area as well, and claimed that her dad asked her to touch him there. Chilvers' next session with K.S. was on February 17, 2000. During this session, Chilvers obtained more information about the abuse. K.S. said that when she was touched or when she touched her dad, their clothes were off. Chilvers drew pictures with K.S. and asked K.S. to place an "X" where she received a bad touch. K.S. was also instructed to place an "X" on the body part that Smith asked her to touch. State's Exhibits # 10 and # 11 indicate that K.S. was touched on the vagina and that she was asked to touch someone on his penis. Other than in the two sessions in February 2000, neither C.S. nor K.S. admitted to Chilvers any kind of sexual abuse.
Finally, other state witnesses testified that Smith was the only male who had custody of and/or access to C.S. and K.S. during the time period when Dr. Springer's medical examinations revealed sexual abuse.
The recent ruling by the Louisiana Supreme Court, State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916, reviewed the admissibility of other sex crime evidence in the trial of a general intent crime, such as aggravated rape or forcible rape. The court found no "lustful disposition" exception to the prohibition concerning other crimes evidence under Article 404(B) when the charged offense is a general intent crime. Affirming the reversal of the defendant's aggravated rape conviction, the court concluded:
We recognize, however, that evidence the defendant may have committed similar offenses under similar circumstances, albeit fourteen years before the charged crime, can be relevant and probative to the jury's credibility determinations in a case that principally rests on the testimony of a now ten-year-old victim. Yet, the problem presented by this case is that, because the evidence sought to be introduced does not bear upon an essential element of the offense, and because motive, intent, and identity are otherwise not genuinely at issue, evidence that the defendant has allegedly raped another female child placed under his supervision on a prior occasion is but another way of demonstrating that he has the propensity to commit such crimes and that the act charged against him probably occurred just as the present *421 victim claims. Such prior sexual misconduct evidence, despite having certain relevance and probative value, is nonetheless inadmissible as a matter of the explicit statutory injunction in that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith," unless the State is able to demonstrate that the other crimes evidence is independently relevant under either a statutory or judicially-recognized exception to this general exclusionary rule.
In this case, the charged offense and the "legislatively responsive" verdict of forcible rape returned by the jury, are both general intent crimes where motive, intent and identity are not at issue.[3] Regarding those charges upon which the jury deliberated, proof of the critical elements of (i) the age of S.F. at the time of the alleged aggravated rape (under the age of 12), or (ii) the act of force or threats of physical violence for forcible rape, rested principally on S.F.'s testimony. Although we are mindful of the supreme court's holding in State v. Maise, XXXX-XXXX (La.1/15/02), 805 So.2d 1141, allowing for harmless error analysis when other sex crimes evidence is improperly admitted, we must conclude, as in Kennedy, that Smith's conviction of forcible rape in this case was prejudiced by the evidence pertaining to the alleged crimes and bad acts against C.S. and K.S. We cannot conclude that the guilty verdict actually rendered in this trial was surely unattributable to the error. Therefore, Smith's conviction for forcible rape is therefore reversed.
Smith's conviction of molestation of a juvenile, however, is a crime with the specific intent element that requires the determination of the defendant's intention of arousing or gratifying his sexual desires. In Kennedy, the court noted prior jurisprudence upholding molestation convictions where evidence of the defendant's sexual abuse or lasciviousness toward other victims was properly admitted. State v. Jackson, 625 So.2d 146 (La.1993). Accordingly, despite the lack of a Prieur hearing, we find that the verdict for Smith's conviction of molestation of a juvenile was surely unattributable to the erroneous admission of the evidence concerning other crimes, wrongs or acts by the defendant against C.S. and K.S. State v. Maise, supra; State v. Powell, 28,788 (La.App.2d Cir.11/1/96), 683 So.2d 1281, writ denied, 97-0092 (La.5/30/97), 694 So.2d 243.

Excessive Sentence
Smith urges that the trial court summarily imposed his sentence and made no attempt to comply with the mandates of La.C.Cr.P. art. 894.1. Smith further contends that without consideration of sentencing factors, it is difficult to determine whether his sentence of five years for the molestation conviction is excessive. He argues that the sentence should be vacated and the case remanded for a lesser sentence, in compliance with La.C.Cr.P. art. 894.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating *422 circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight. State v. Berry, 29,945 (La. App.2d Cir.10/29/97), 702 So.2d 33; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Secondly, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
The record shows an adequate factual basis for the sentence imposed. The trial court stated that it considered a number of things when sentencing Smith, including the evidence presented at trial, the nature of the circumstances, the fact that this case involved a young victim whom the defendant had control over, and Smith's lack of a prior criminal record. There is no requirement that specific matters be given any particular weight. State v. Berry, supra; State v. Callahan, supra. Since the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos, supra.
Smith's five-year sentence at hard labor on the molestation of a juvenile offense, one year of which is to be served without benefits, is less than the maximum sentence he could have received for this conviction. Considering the circumstances of the case and the background of the defendant, this sentence is not grossly out of proportion to the seriousness of the offense, nor is it a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra. Viewed in light of the harm done to society, the sentence imposed does not shock our sense of justice. State v. Hogan, supra; State v. Bradford, supra. This argument is therefore without merit.

*423 Conclusion

For the foregoing reasons, defendant's forcible rape conviction is hereby reversed due to the trial court's failure to grant his motion to quash the amended indictment and the resulting prejudice. The case is hereby remanded for a new trial on this charge. Defendant's conviction and sentence on the charge of molestation of a juvenile are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
DREW, J., concurs with written reasons.
DREW, J., concurring.
I concur with the majority opinion with these observations.
First, under State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916, I agree there is no way to avoid reversing this conviction on the charge of Forcible Rape (a general intent crime). However, it is bizarre that, had this serial pedophile been charged with attempted aggravated rape or attempted forcible rape (each being a specific intent crime), we could have affirmed, under the Kennedy, supra, analysis. The majority opinion remands for a trial on forcible rape, the general intent crime for which the victim was convicted.
An attempt is included in the completed act. See La. R.S. 14:27(C). Kennedy, supra, and a plethora of other cases have confirmed that an attempt is a specific intent crime. Had this defendant been validly charged with either Attempted Aggravated Rape or Attempted Forcible Rape, evidence concerning the other victims in Counts 3 and 4 would have been admissible. Since the jury returned a verdict of guilty of forcible rape, the evidence is certainly sufficient to support a conviction of attempted forcible rape. To prevent the victim being subjected to the trauma of possibly testifying at a retrial, I would rather have entered a verdict of guilty of attempted forcible rape and remanded for sentencing on that crime. At the retrial, the trial court may have to decide whether La. C.E. art. 412.2 (enacted in 2001, after this December 2000 trial) was intended to apply to both general and specific intent crimes.
Second, counts 3 and 4 were doomed before the ink dried on the amendments to the indictment. The ADA erroneously relied upon our previous writ disposition (State v. Jimmy Ray Washington, No. 34,205-KW) as justifying any amendment by the District Attorney to a proper indictment. This interpretation is incorrect. What the state can do, as in count 2, is add to an indictment any related charge against the same defendant, so long as the added charge may be initiated by a bill of information. The state could also amend down to lesser included crimes. The state may correct inadvertent errors to the counts rendered by a Grand Jury. This Assistant District Attorney, certainly in good faith, mistakenly violated statutory and constitutional prohibitions by adding to the indictment crimes (against different victims) carrying life sentences. La. C.Cr.P. art. 382, and La. Const., Art I, § 15. Had the jury returned guilty verdicts on counts 3 and 4, a Motion in Arrest of Judgment would have been good as gold, resulting in a new trial.
Further, can the jurisdictional defect in counts 3 and 4 be waived? Was there a valid trial on the last two counts or were the proceedings (as to these counts) null, void and without effect? Did jeopardy ever "fully" attach as to counts 3 and 4? See State v. Ruple, 437 So.2d 873 (La.App. *424 2d Cir., 1983) and State v. Goodley, 423 So.2d 648, (La.1982). Could this defendant have been retried on counts 3 and 4, or does the Fifth Amendment of the U.S. Constitution protect this defendant, even though his trial on counts 3 and 4 was absolutely invalid?
I respectfully concur.
APPLICATION FOR REHEARING Before NORRIS, C.J., WILLIAMS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] La. C.E. art. 404(B) provides:

Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
[2] La. C.E. art. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
[3] See State v. Straughter, 97-1161 (La.App. 4th Cir.2/10/99), 727 So.2d 1283, writ denied, 99-0704 (La.7/2/99), 747 So.2d 14 (J. Plotkin, dissent) for discussion of a conviction of the "legislatively responsive" charge of forcible rape in a similar setting. In this case, Smith did not move during trial to exclude the responsive verdict of forcible rape on sufficiency grounds pursuant to La.C.Cr.P. art. 814(C).