776 So.2d 613 (2000)
STATE of Louisiana
v.
Sugar Ray LEWIS.
No. 2000-KA-0053.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
*615 Harry F. Connick, District Attorney, Jeffrey W. Davidson, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge WALTZER, Judge McKAY, Judge KIRBY.
KIRBY, Judge.

STATEMENT OF CASE[1]
On May 3, 1999, the defendant, Sugar Lewis, was charged with obscenity in violation of La. R.S. 14:106. The defendant entered a plea of not guilty at his arraignment on May 10, 1999. A motion hearing was held on June 4, 1999. The trial court found probable cause and denied defendant's motion to suppress evidence. After a jury trial on July 22, 1999, the defendant was found guilty of attempted, obscenity. On August 10, 1999, the State filed a multiple bill of information to which the defendant pled not guilty. A multiple bill hearing was held on August 25, 1999. The trial court adjudicated the defendant to be a fourth felony offender and sentenced defendant to life imprisonment at hard labor. Defendant's motion for reconsideration of sentence was denied and the trial court granted defendant's motion for appeal.

STATEMENT OF FACT
On March 29, 1999, Doretha Nickles was living on Dauphine Street. On that day, she had sent her fiancé to the grocery to purchase some seasoning that she needed for the meal she was preparing. He was taking a long time so she went to look for him. She walked to the corner of Dauphine and Elysian Fields Avenue where she encountered the defendant. The defendant spoke to her. In response, Ms. Nickles nodded her head. Ms. Nickles decided to walk to Jean's Po-boy Shop as she thought her fiancé might have been playing a video poker machine. She crossed Elysian Fields by the Baptist Friendship House. As she passed the building, she heard someone say "psst." She turned and saw the defendant. He had pulled down his pants and had his "private" out. The defendant came after her from behind, choked her and rolled her to her side. She fought with the defendant and was able to escape. As she was running, she noticed the defendant did not leave the scene. He stood there masturbating. When she looked back again, the defendant was running towards her on *616 the opposite side of the street. As the victim approached the intersection of St. Claude and Elysian Fields, she saw her son and his girlfriend. She yelled to her son to run after the defendant who was then running through Schwegmann's parking lot. She told her son that the defendant attempted to rape her. Her son and his girlfriend ran after the defendant but the defendant ran into an alleyway and her son lost sight of the defendant. They saw the defendant when he came out of the alleyway and continued to chase him. They thought they lost him again near the intersection of Montgomery and Elysian Fields. However, the victim's son's girlfriend saw the defendant's feet sticking out under a white van. They barricaded the defendant under the van until the police arrived. Ms. Nickles identified the defendant on the scene as the perpetrator.
Ferdinand Nickles, Doretha Nickles' son, testified that he and his girlfriend were waiting at the bus stop at the intersection of St. Claude and Elysian Fields when they saw his mother running towards them on Elysian Fields. He shouted to his mother who looked distraught. His mother told him that someone had attempted to rape her. When he turned, his mother saw the guy and he ran after the subject. The witness stated that he had lost sight of the defendant when his girlfriend observed the defendant under a white van. They put barricades around the van to prevent the defendant from escaping. A cab driver pulled up and asked if any assistance was needed. They asked the cab driver to call the police. The witness identified the defendant at trial.
Monique Gonzales, Ferdinand Nickles' girlfriend, saw the victim running towards them on Elysian Fields while she and Ferdinand were waiting for a bus. The victim told them that someone had just attempted to rape her. The victim pointed out the defendant who they saw running from the area. The witness and Ferdinand ran after the defendant. They lost sight of the defendant for a short while. However, the witness spotted the defendant on Rampart Street and they continued chasing him. They again lost sight of him but located him underneath a white van a few minutes later. They barricaded the defendant under the van until the police arrived.
Officer Dennis DeJean investigated the incident that occurred in the eight hundred block of Elysian Fields. When the officer arrived on the scene, he observed a white van parked near the intersection of Burgundy and Elysian Fields. The defendant was underneath the van. He was being held there by the victim, her son and his girlfriend. The officer's investigation revealed that the defendant attacked the victim in the eight hundred block of Elysian Fields while his penis was exposed and attempted to have sexual intercourse with the victim against her will. The victim positively identified the defendant as the perpetrator. The defendant was then removed from underneath the vehicle and placed under arrest.
Det. Shiryl Matthews, a rape detective with the New Orleans Police Department, responded to a call concerning an attempted rape on Elysian Fields Avenue on March 29, 1999. When the officer arrived on the scene, she met with the victim, the victim's son and the son's girlfriend. The officer also observed that the defendant was in the back seat of a police vehicle. After interviewing the victim and the witnesses, she determined that a rape did not occur. While on the scene, the officer called for a crime lab technician. The lab technician took photographs and collected evidence from the scene, including the defendant's clothing. Two liquid samples were taken from the ground. Sample one was taken from the eight hundred block of Elysian Fields. Sample two was taken in front of 813 Elysian Fields Avenue. The officer testified that the victim identified the defendant on the scene as the perpetrator.
Madelyn Collins, a criminalist with the New Orleans Police Department Crime Lab, testified that she tested several items *617 for seminal fluid, blood, and/or hair. A plastic bag and a blue nylon cap tested negative for seminal fluid, blood and/or hair. Defendant's brown shoes and red tee shirt tested positive for blood but negative for seminal fluid and/or hair. Defendant's black jeans and white shorts tested positive for blood and seminal fluid but negative for hair. Liquid sample one, taken from the eight hundred block of Elysian Fields, tested negative for seminal fluid. Liquid sample two, taken from in front of 813 Elysian Fields, tested positive for seminal fluid.

ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION

COUNSEL'S ASSIGNMENT OF ERROR NUMBER 1
The defendant argues that the trial court erroneously adjudicated him to be a fourth felony offender. He contends that the State failed to produce any evidence concerning the "cleansing period" between each offense. A review of the appellate record reveals that the defendant did not file a motion to quash the multiple bill or object to the failure of the State to prove that the cleansing periods had not elapsed at the multiple bill hearing. As such, this issue has not been preserved for appeal. See La. R.S. 15:529.1(D)(1)(b) and State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72.
This assignment is without merit.

COUNSEL'S ASSIGNMENT OF ERROR NUMBER 2
The defendant further suggests that his trial counsel was ineffective for failing to file a motion to quash the multiple bill which would have preserved his right to appeal the State's alleged failure to prove that the cleansing periods between the predicate offenses had not elapsed.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986). We find the record here is sufficient to address the merits of this claim.
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
In the present case, the defendant contends that his trial counsel was ineffective *618 for failing to file a motion to quash the multiple bill or object on the basis of the State's failure to prove that the cleansing periods had not elapsed. The multiple bill of information filed by the State and the documentation presented at the hearing indicate that the defendant pled guilty to theft between one hundred and five hundred dollars on July 10, 1985 and was sentenced to one year at hard labor. On January 20, 1995, the defendant pled guilty to possession of stolen property and was sentenced to one year at hard labor. On April 30, 1997, the defendant pled guilty to multiple offender theft and was sentenced to two years at hard labor. The sentence was suspended and placed on two years active probation. The present offense occurred on March 29, 1999.
La. R.S. 15:529.1(C) provides that the statute does not apply when more than ten years have elapsed since the expiration of the maximum sentence, or sentences, of the previous convictions, or convictions, and the time of the commission of the last felony for which he has been convicted. As the documents produced by the State reflect that the ten years did not elapse between each offense, the State met its burden of proof under La. R.S. 15:529.1. Therefore, defendant's trial counsel did not have a meritorious argument concerning the cleansing period, and a motion to quash based on this issue would have been denied. As such, defendant's trial counsel was not ineffective for failing to file a motion to quash the multiple bill of information.
This assignment of error is without merit.

COUNSEL'S ASSIGNMENT OF ERROR NUMBER 3
The defendant also argues that the trial court imposed an unconstitutionally excessive sentence. After adjudicating the defendant to be a fourth felony offender, the trial court sentenced to life imprisonment at hard labor pursuant to La. R.S. 15:529.1(A)(1)(c)(i).[2]
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
Prior to sentencing the defendant, the trial court recognized that the defendant had more than four felony convictions, stating:
All right, the Court would, since the Court has noted that the Defendant does have a number of other convictions besides the ones sited [sic] in the Multiple Offender Bill, the Defendant also did *619 have another case in this Section of court charging him with rape that the State had to ultimately nolle prosed [sic] because of problems with the victim, but that along with some other arrests, the Court can consider in deciding the Defendant's character and propensities. The Court believes that Mr. Lewis has shown that if he's on the street, there is only one thing that he's going to do, and that is to commit crimes and prey on other people in this community. The Court believes that way the Court can assure that he does not do that is to make sure that he spends the remainder of his natural life in jail.
As the trial court noted, it was aware of the defendant's extensive criminal history. The defendant had been convicted of seven felonies from 1982 to 1999. In addition to the present offense, the defendant was also convicted of simple battery as a result of the same circumstances which led to the present conviction of attempted obscenity. Furthermore, the trial court was aware that, although the defendant was charged with obscenity and convicted of attempted obscenity, the facts of the present case indicate that the defendant was attempting to force sexual intercourse on the victim without her consent. Thus, the trial court was aware, and noted in its reasons, the defendant's propensity for serious and injurious criminal offenses. The facts of the present case and defendant's extensive criminal history clearly support the trial court's decision to sentence the defendant to life imprisonment. The sentence imposed is not unconstitutionally excessive.
This assignment is without merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 1
The defendant contends that his convictions for simple battery and attempted obscenity violates his right against double jeopardy. As stated above, the defendant was convicted of simple battery of Doretha Nickles after a bench trial on the same day the jury convicted him of attempted obscenity.
In State v. Jones, 97-2217, p. 6-9 (La. App. 4 Cir. 2/24/99), 731 So.2d 389, 393-395, writ denied 99-1702 (La.11/5/99), 751 So.2d 234, this court discussed the law concerning double jeopardy:
Article 1, § 15 of the Louisiana Constitution of 1974, and the Fifth and Fourteenth Amendments of the United States Constitution, prohibit placing a person in jeopardy twice for the same offense. See also La.Code Crim. Proc. art. 591.
Article 596 of the Louisiana Code of Criminal Procedure, in pertinent part, provides that double jeopardy exists in a second trial when the charge is "[b]ased on a part of a continuous offense for which the defendant was in jeopardy in the first trial."
When evaluating double jeopardy claims, Louisiana courts have recognized both the Blockburger test and the "same evidence" test; however, courts have mainly relied upon the "same evidence" test. See, e.g., State v. Vaughn, 431 So.2d 763 (La.1983). Nonetheless, the Louisiana Supreme Court has not adopted a "same transaction" test, which would prohibit, on double jeopardy grounds, prosecution for different crimes committed during one sequential and continuing course of conduct. City of Baton Rouge v. Jackson, 310 So.2d 596, 598 (La.1975); State v. Gaines, 96-1850, p. 9 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, 684, writ denied, 97-0510 (La.9/5/97), 700 So.2d 503. Consequently, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy. State v. Nichols, 337 So.2d 1074, 1076-78 (La.1976); Gaines, supra, p. 9; 688 So.2d at 684.
La. R.S. 14:106 defines the crime of obscenity, in pertinent part, as "the intentional ... exposure of the genitals... in any public place or place open *620 to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive." An obscenity conviction can be sufficiently supported by the testimony of witnesses that a defendant's genitals were exposed and that he was masturbating. State v. Arabie, 507 So.2d 859 (La.App. 5 Cir.1987). Further, defendant's masturbation is sufficient to indicate that his actions were intended to arouse him sexually. Id.
Simple battery is defined as "a battery committed without the consent of the victim." La. R.S. 14:35. Battery is "the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid of substance to another."
In the case at bar, the defendant's two convictions do not violate his right against double jeopardy. While the two convictions arise from the same continuing set of circumstances, the evidence for each offense is completely separate and distinct. Evidence supporting the defendant's conviction for simple battery is based upon the victim's testimony that the defendant approached her from behind and choked her. Defendant's conviction for attempted obscenity is based upon the victim's testimony that after the defendant attacked her, she observed that the defendant had his pants down, his penis was exposed and he was masturbating.
This assignment is without merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR NUMBER 2
The defendant further suggests that the jury verdict of attempted obscenity is not a legal verdict as it is not a responsive or lesser verdict to the original charge of obscenity. A review of the appellate record reveals that the defendant did not object to the jury verdict form or the jury verdict when rendered. Nor did the defendant file a motion for new trial or motion in arrest of judgment. Thus, this issue has not been preserved for appellate review. La.C.Cr.P. article 841. Further, attempted obscenity is a lesser and included offense to the offense of obscenity. La.C.Cr.P. article 815; State v. Walters, 440 So.2d 115 (La.1983); State v. Allo, 510 So.2d 14 (La.App. 5 Cir.1987), writ denied, 514 So.2d 1174 (La.1987).
This assignment is without merit.

CONCLUSION
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant was charged by a separate bill of information with simple battery of Doretha Nickles. The case was docketed as 406-697 and assigned to the same division as the present offense. The defendant elected a judge trial as to this offense on July 22, 1999, and was found guilty as charged. The trial court sentenced defendant to ninety days in parish prison with credit for time served.
[2] This portion of the multiple offender statute provides that "[I]f the fourth or subsequent felony is such that, upon first conviction the offender would be punishable by imprisonment for any term less than his natural life then ... [t]he person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest period prescribed for a first conviction but in not event less than twenty years and not more than his natural life."