996 So.2d 480 (2008)
STATE of Louisiana, Appellee
v.
Michel CASTON, Appellant.
No. 43,565-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 2008.
*482 Sir Clyde Lain, II, Monroe, for Appellant.
William R. Coenen, Jr., District Attorney, Penny Douciere, Assistant District Attorney, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
A jury convicted the defendant of two counts of attempted indecent behavior with a juvenile and attempted obscenity. La. R.S. 14:81 and 14:106(A)(1). The defendant was sentenced to three and one-half years at hard labor for each count of attempted indecent behavior and one and one-half years at hard labor for attempted obscenity, to run concurrently with each other and consecutively to any other sentence *483 the defendant was then serving. The defendant appeals. For the following reasons, the defendant's convictions and sentences are affirmed.

Facts
On the evening of August 8, 2006, T.C. and D.C., who were sisters, were playing outdoors in the carport of the home where they lived with their grandmother. Their cousins, T.L. and C.L., who lived several houses down on the same street, played with them. D.C. and C.L. were sixteen years old and fourteen years old, respectively, and the other girls were seventeen years old or over. The defendant, Michel Lee Caston, lived with his wife in the house directly across the street. As all four girls were playing around in the carport, they could see the defendant moving about the living room and standing at the open front doorway which had only a screen door. It was dark outside, but the light from the defendant's kitchen and television revealed that he wore only an open dark-colored bathrobe. After D.C., C.L. and T.L. saw him walk away and come back, he stood standing at the screen door facing them. He was unclothed, stroking his genitalia. After looking at him briefly, the victims ran to tell the grandmother, who immediately called the police.
The police officer responded to the dispatcher and found the victims outside where they had been playing. When Officer Atkins questioned them about "a naked man possibly walking around in the street," he was directed to the defendant's house. Officer Atkins spoke with T.C.,[1] who described the incident. He crossed the street and looked into the defendant's house, where he saw Caston wearing blue pajama pants and a dark-colored bathrobe. Officer Atkins questioned him, but the defendant denied walking around his house unclothed. Instead, he said he had worn black shorts earlier and changed into blue pajama pants. Officer Atkins returned to question the victims and based on their re-telling of the same version of events, he arrested the defendant.
The defendant was charged with two counts of indecent behavior with a juvenile as to D.C. and C.L. and obscenity as to T.L. Following a jury trial, Caston was convicted of two counts of attempted indecent behavior with a juvenile and attempted obscenity. He was sentenced to three and one-half years at hard labor on each count of attempted indecent behavior and one and one-half years at hard labor on the obscenity charge. The defendant appeals his convictions and sentence.

Discussion
Defendant assigns as error his jury convictions of two counts of attempted indecent behavior with a juvenile and one count of attempted obscenity, and the trial court's error in failing to grant a directed verdict of acquittal at the conclusion of the state's case. He contends that the evidence presented failed to show he either engaged in any of the proscribed conduct, exposed himself, or that a two-year age difference existed between him and the juvenile victims.
La.C.Cr.P. art. 778 provides for the entry of directed verdicts of acquittal at the close of the state's case in bench trials. Nevertheless, when a defendant challenges both the sufficiency of the evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Mickens, 31,737 (La.App. 2d Cir.3/31/99), 731 So.2d 463, *484 writ denied, 99-1078 (La.9/24/99), 747 So.2d 1118, citing State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020.
The question of sufficiency of the evidence is properly raised by a motion for post verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Howard, 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 99-2960 (La.5/5/00), 760 So.2d 1190. Although the record shows the defendant did not make this motion, this court will consider sufficiency arguments in the absence of such motion. State v. Henson, 38,820 (La.App. 2d Cir.9/22/04), 882 So.2d 670; State v. Green, 28,994 (La. App. 2d Cir.2/26/97), 691 So.2d 1273.
This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422. Where there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Dorsey, 41,418 (La. App. 2d Cir.9/20/06), 939 So.2d 608, writ denied, 06-2686 (La.6/1/07), 957 So.2d 174; State v. Wilhite, 40,539 (La.App. 2d Cir.12/30/05), 917 So.2d 1252, writ denied, 06-1078 (La.11/9/06), 941 So.2d 35. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Dorsey, supra; State v. McCray, 621 So.2d 94 (La. App. 2d Cir.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dorsey, supra; State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
La. R.S. 14:81 provides, in pertinent part:

*485 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense.
To convict a defendant of this offense, the state must prove that (1) there was an age difference of greater than two years between the accused and the victims, who are not yet seventeen; (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child; and (3) the accused had the specific intent to arouse or gratify either his own or the victim's sexual desires. State v. Robinson, 43,063 (La.App. 2d Cir.2/13/08), 975 So.2d 853; State v. Bugbee, 34,524 (La.App. 2d Cir.2/28/01), 781 So.2d 748; State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A); see State v. Stec, supra. An attempt requires both "specific intent to commit a crime" and an act or omission "for the purpose of and tending directly toward the accomplishing of his object." La. R.S. 14:27(A); State v. Houston, 40,642 (La.App. 2d Cir.3/10/06), 925 So.2d 690, writ denied, 06-796 (La.10/13/06), 939 So.2d 373.
Indecent behavior with a juvenile is a specific intent crime requiring the state to prove the defendant's intent to arouse or gratify a sexual desire by actions with a child. State v. Robinson, supra; State v. Wallace, 41,720 (La.App. 2d Cir.1/24/07), 949 So.2d 556. The statute encompasses not only the physical touching of the victim in an indecent manner, but also "indecent sexual displays in the presence of children under the age of seventeen." State v. Interiano, 03-1760 (La.2/13/04), 868 So.2d 9.
In Interiano, Id., the Supreme Court held that the statutory phrase "in the presence of" encompassed sensory awareness as well as physical proximity. The court explained that a child need not be a stimulus for the sexual display in order to be psychologically harmed from having such a display committed in his or her presence:
[T]he complete definition of `presence' encompasses sensory awareness as well as physical proximity. The legal usage of the word `presence' denotes something more than being in the immediate vicinity; it is the viewing or awareness of an act that gives legal significance to the term.... such a construction serves the legislative interest of preventing the psychological harm that witnessing such sexual displays can cause.
868 So.2d at 16.
Earlier jurisprudence defining the words "lewd" and "lascivious" found such terms were not vague and indefinite. The word "lewd" means lustful, indecent, lascivious, and signifies that form of immorality which relates to sexual impurity or incontinence carried on in a wanton manner. The word "lascivious" means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, and tending to deprave the morals in respect to sexual *486 relations. State v. Holstead, 354 So.2d 493 (La.1977).
La.R.S. 14:106 provides in pertinent part:
A. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.
At the trial, the state called Officer Atkins as its first witness. On the date of the incident, Atkins was on patrol and received a dispatch concerning a "naked man in the street" near 210 Dacron in Rayville. After arriving, he saw the four victims outside, so he immediately questioned them about the man. They answered that the man in question was inside the house across the street. While Officer Atkins interviewed T.L., he looked over his shoulder towards the defendant's house where he saw the open front door. The victims said a man had been masturbating and wore an open black robe with nothing underneath. Officer Atkins crossed the street to investigate. While doing so, he saw Caston inside through the front screen door. Inside lights illuminated the home's interior objects in detail. Officer Atkins identified the defendant in open court.
When Officer Atkins questioned the defendant, he was clothed in blue pajama pants and a black bathrobe. The defendant stated he was the only male at home, but his mother-in-law was in her room in the rear of the house, with the door closed. The defendant's wife was gone on an errand. She returned as her husband was being arrested. The defendant told Officer Atkins he had been wearing black boxer shorts before he changed into blue pajama pants. As Officer Atkins walked towards defendant's house, Caston stood in the front doorway watching him approach. The distance between the two houses measured 105 feet.
C.L. testified about events that occurred on August 8, 2006. She lived at 111 Dacron and was sixteen. She was outside her aunt's house with T.L., D.C. and T.C. between 8:00 and 9:00 p.m. talking and playing when she observed the defendant walking around inside of his house. C.L. testified that the lights were on inside the defendant's house allowing them to see him clearly. C.L. identified the defendant as the person she saw in the house. Describing Caston's conduct, C.L. stated that he wore a bathrobe with nothing on underneath. He stood in the front doorway with no clothing, and she could see his penis. The defendant was standing in the house touching his penis while he appeared to be looking at them outside. C.L. testified she was sure the defendant was touching his penis, but she did not know if his penis was erect. The defendant made no attempt to conceal his actions. Although the living room lights were off, the kitchen lights were on, and C.L. could still see the defendant masturbating. His actions offended her.
C.L.'s testimony also described an earlier incident which happened a few days prior to August 8, 2006, in which she and her cousin, D.C. were outside in the carport. Defendant's front door was open and the screen door was closed, allowing the girls to see inside the home. They saw the defendant sitting in a recliner masturbating while he smoked. His leg was propped over the side of the chair and he was touching his penis. C.L. testified the defendant would occasionally look over at them and even get up and look out the door. That evening, when C.L. left to walk home, she turned around and saw the *487 defendant watching her. C.L. stated they decided to ignore this earlier incident.
D.C. testified next. She was fourteen on the date of the incident and living with her grandmother at 210 Dacron Street. Observing Caston's actions from the light inside his home, D.C. stated that the defendant was not wearing any clothing and he was masturbating. D.C. testified the defendant walked to the front door and stood about a foot away. At that time, he was not wearing any clothing. He stood in the doorway masturbating and looking directly at the victims as he touched his penis. She denied that Caston was wearing black shorts or any other garments while he stood in the doorway. After the girls reported what happened, the defendant left the front doorway of his house and came back wearing clothes. D.C. identified the defendant in open court. A few days before the instant offense, D.C. also saw the defendant lying down masturbating and smoking. She stated the defendant was looking at her and C.L. while engaged in this activity and made no attempt to conceal his actions.
On cross, D.C. admitted that she ignored the first incident a few days earlier. When asked why she told her grandmother the second time, D.C. explained that it was "nasty." D.C. estimated that the defendant had been engaged in the indecent conduct on the night in question for four to five minutes.
T.L. testified she was eighteen on August 8, 2006, and lived at 111 Dacron Street. T.L. likewise confirmed that she could see into the defendant's house across the street from her aunt's home on the night of the incident. His front door was open and the screen door was closed. The television in the living room was on and the kitchen lights were on. T.L. saw the defendant standing in the front door undressed while he masturbated. He was holding his penis while moving his hand and looking directly at the victims.
Over the defense counsel's objection, Danny Fuller testified next to the introduction of other crimes evidence. Fuller is a State Division of Probation and Parole Agent and has been Caston's parole officer for seven or eight years. He testified concerning defendant's prior convictions on three counts of incest and aggravated oral sexual battery. The defendant was paroled on May 18, 1997, and his parole was to expire on April 1, 2007. Prior to the expiration of his parole, the defendant committed the subject offenses on August 8, 2006.
The defendant's wife, Diane Caston, testified that they married in February of 2004. She testified she gave him a pair of red undershorts, a black pair of shorts and a blue robe to put on after he took a bath. She stated that on the night of his arrest, the defendant was watching television in the living room when she left to pick up take-out food.
Caston testified in his own defense. He explained that on the night of the incident, he had been in the house since getting home from work. When his wife left the house, he denied masturbating. He stated he sat on the couch, got up and went into the kitchen to talk to his mother-in-law briefly. He then saw the police pull up outside as his mother-in-law went back to her bedroom. He stood in the front doorway watching and changed into his pajama bottoms in anticipation of his wife's return. Then the police were at his front door, and he was eventually arrested.
From this evidence, we conclude the state established that D.C. and C.L. were under seventeen years or age when the defendant committed the crime of attempted indecent behavior with a juvenile. The testimony of Danny Fuller regarding Caston's *488 crimes with his daughter in the 1980's established that the defendant was more than two years older than the juvenile victims in this case.
On the obscenity charge, the state offered victim testimony to establish the essential elements of the offense. The defendant was inside his house, but stood in the front doorway handling his penis. While the defendant's house is not a public place, the victims' testimony establishes unobstructed viewing by virtue of the screen door. The defendant's prurient conduct was targeted towards the public street and the victims, whom he observed on the other side of the street.
Diane Caston's testimony established it was possible to see inside the home with the front door opened, through the screen door. She admitted that she could be watched when she was inside of her house. The screen door allowed the neighbors to see inside. One can infer from the victims' testimony that the defendant knew he could be seen since he moved from the door and put on clothes as the police arrived. The testimony of D.C. and C.L. about a recent similar incident was evidence indicating the absence of mistake or accident by Caston's exposing himself to the victims. The combined testimony of the witnesses is sufficient to establish that the defendant intentionally exposed himself in the presence of the juveniles.
This court and several other circuits have held that a witness's testimony regarding a defendant exposing himself and masturbating is sufficient to support a conviction of obscenity. State v. Lucas, 39,419 (La.App. 2d Cir.3/9/05), 896 So.2d 331; State v. Poche, 05-1042 (La.App. 3d Cir.3/1/06), 924 So.2d 1225; State v. Lewis, 00-0053 (La.App. 4th Cir.12/13/00), 776 So.2d 613, writ denied, 01-381 (La.10/5/01), 798 So.2d 966.
This assignment of error is without merit.
The defendant next assigns as error the trial court's pre-trial rulings concerning the admissibility of other crimes evidence under La. C.E. arts. 404 and 412.2. The state notified the defendant of its intent to introduce evidence related to two distinct matters for the purpose of proving a pattern of behavior and "lustful disposition." The first issue concerned defendant's 1987 convictions for aggravated oral sexual battery and incest. The second dealt with a similar act of indecent exposure toward two of the same victims shortly before the offense of conviction. The state sought to use this evidence to prove a pattern of behavior and a lustful disposition.
La. C.E. art. 404(B) provides in pertinent part:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 412.2 provides in part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission *489 of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Evidence of other crimes may be admissible if the state is able to demonstrate that the other crimes evidence is independently relevant under a statutory or judicially-recognized exception to the general exclusionary rule of La. C.E. art. 404(B). State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141, citing State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916; State v. Smith, 35,699 (La.App.2d Cir.4/5/02), 815 So.2d 412. In State v. Williams, 02-1030 (La.10/15/02), 830 So.2d 984, the court explained that the state legislature enacted La. C.E. art. 412.2 primarily in response to State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, and State v. Kennedy, supra. The Supreme Court held that La. C.E. art. 412.2 does not require the trial court to hold a pre-trial hearing prior to admitting the evidence. Cf. State v. Smith, supra.
A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36,613 (La.App. 2d Cir.12/4/02), 833 So.2d 1034; State v. Butler, 30,798 (La.App. 2d Cir.06/24/98), 714 So.2d 877, writ denied, 98-2217 (La.01/8/99), 734 So.2d 1222.
For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by the defendant, (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(1), i.e., motive, intent, knowledge, identity, absence of mistake or accident, and (3) show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993). Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crime to show the intent with which the act charged was committed. State v. Wallace, supra.
In February 2007, the state filed a notice of intent to use other crimes evidence. It stated the state's intent to offer evidence of Caston's 1987 convictions and his prior acts of exposing himself to D.C. and C.L. A hearing on the admissibility of evidence concerning defendant's earlier exposure occurred on April 4, 2007, before the trial. D.C. and C.L. testified and were subject to cross-examination. At the same hearing, the trial court ruled from the bench that this evidence regarding defendant's prior exposure to the girls was admissible. The trial court also heard argument at the pretrial hearing regarding Caston's 1987 convictions for sexually assaultive behavior. The defendant argued the crimes occurred twenty years ago. The trial court ruled to allow introduction of the 1987 convictions under La. C.E. art. 412.2. At trial, before hearing the testimony of defendant's parole officer, defense counsel renewed its objection to the state's introduction of other crimes evidence.
From this pretrial procedure, we find that defendant received reasonable notice in advance of trial concerning the state's intended use of evidence of the prior 1987 convictions and the other acts of defendant exposing himself before the girls. Under La. C.E. art. 412.2, a more detailed hearing in advance of trial presenting the specific evidence of the 1987 convictions *490 was not required, and Caston's arguments to the contrary are without merit. State v. Williams, supra.
Regarding the admission of Caston's prior acts of exposing himself to D.C. and C.L., we find independent relevance in that evidence showing a plan or pattern in Caston's actions, and the absence of mistake or accident. In both the prior incident and the present crime, the victims testified that Caston was aware of the girls' presence nearby and made no attempt to conceal his actions.
Caston argues that the evidence of defendant's 1987 convictions for sexual offenses perpetrated against his daughter was improperly presented at trial through the testimony of his parole officer, Danny Fuller. The defendant was paroled in 1997 after serving ten years of a twenty year sentence for the 1987 convictions. Fuller began supervising defendant's probation in 1999. Caston argues that even assuming the evidence was admissible as other crimes evidence under La. C.E. art. 412.2, the state was required to produce the victim of the 1987 conviction.
The state offered two original indictments for the 1987 offenses to which Caston pled guilty which Fuller identified. The defense objected. The jury was removed from the courtroom and defendant's continuing objection as to the state's method of introducing other crimes evidence vis-a-vis his 1987 conviction was discussed among both counsel and the trial court. Thereafter, the trial court ruled the jury would hear the redacted version of the 1987 indictment for three counts of incest, reduced from aggravated rape. As Officer Fuller began reading the first count charged in the original indictment to the jury, defense counsel entered the following stipulation:
MR. LAIN: Your Honor, we would stipulate that the document reflects what he's saying and therefore we stipulated to the document then there's no need to read the document right now.
Fuller also identified the original transcript of defendant's guilty plea colloquy dated August 31, 1987, at the trial. Finally, Fuller identified the defendant as the same person whose parole he had supervised in connection with the offenses to which he pled guilty in 1987.
After Fuller was cross-examined and testified on redirect, the state introduced Exhibits S-3, S-4 and S-5. Exhibit S-3 was the original grand jury indictment in State v. Michael Caston, Docket 25,131, Fifth Judicial District Court, Franklin Parish, filed June 5, 1987, as amended on August 31, 1987, charging the defendant with three counts of incest involving his daughter during 1984, 1985 and 1986. Exhibit S-4 was the original grand jury indictment in State v. Michael Caston, Docket 25,132, Fifth Judicial District Court, Franklin Parish, filed June 5, 1987, charging the defendant with aggravated oral sexual battery involving his daughter between December 1, 1984, and January 31, 1985, when the child was under the age of twelve. Exhibit S-5 consisted of the transcript of defendant's guilty plea entered in both dockets on all four counts charged in connection with the offenses involving his daughter. After these exhibits were introduced, the state rested.
La. C.E. art. 803(8) provides that records, reports, statements, or data compilations, in any form, of a public office or agency setting forth its regularly conducted and regularly recorded activities are exceptions to the hearsay rule. The public document exception to the hearsay rule is based on the principles of necessity and the probability of trustworthiness. See State v. Smith, 04-800 (La.App. 1st Cir.12/17/04), 897 So.2d 710, citing State v. *491 Shaw, 00-1051 (La.App. 5th Cir.2/14/01), 785 So.2d 34, writ denied, 01-969 (La.2/8/02), 807 So.2d 861. The substance of Caston's prior crimes was established in evidence by the public record of his convictions under this exception to the hearsay rule, not by Officer Fuller. There was no need for the prior victim's testimony.
Likewise, this court has recognized a parole officer's ability to testify regarding a defendant's identity concerning prior convictions. State v. Brown, 42,188 (La. App. 2d Cir.9/26/07), 966 So.2d 727, writ denied, 07-2199 (La.4/18/08), 978 So.2d 347. Officer Fuller's testimony linking Caston to the prior convictions was therefore appropriately received into evidence.
Finally, regarding Caston's general objections to the admissibility of his prior crimes of incest against his daughter, we find no abuse of the trial court's discretion under La. C.E. art. 412.2 in admitting this evidence. The victim of those crimes was a child under the age of twelve. The crimes evidenced a lustful disposition toward children which was relevant concerning the defendant's motive and intent toward the child victims of the present offense.
All assignments of error and arguments regarding the evidence of other crimes and wrongful acts are therefore without merit.
In Caston's final assignment of error, he argues that the sentence imposed by the trial court are excessive. La. C.Cr.P. art. 881.1 precludes a defendant from raising an objection to his sentence on appeal not first presented to the trial court in a motion to reconsider sentence. In such a circumstance, the defendant is relegated to simply having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121; State v. Duncan, 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Robinson, supra, citing State v. Lobato, 603 So.2d 739 (La. 1992); State v. Livingston, 39,390 (La.App. 2d Cir.4/6/05), 899 So.2d 733; State v. White, 37,815 (La.App. 2d Cir.12/17/03), 862 So.2d 1123. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La. App. 2d Cir.1/26/05), 892 So.2d 710; State v. Sutton, 32,871 (La.App. 2d Cir. 1/26/00), 750 So.2d 436. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore has broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
La. R.S. 14:81 provides in part:
H. (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
Since the jury reached verdicts of attempted indecent behavior with the juveniles, *492 the sentence exposure was one-half of the longest term of imprisonment of the attempt offense. La. R.S. 14:27.
From our review of the record, the defendant's sentence is not constitutionally excessive. The defendant received the maximum sentence available for the crimes for which the jury convicted him. He had prior convictions for sexual offenses involving a juvenile victim and was on parole when he committed the instant offenses. The sentences when viewed in light of the harm done to the victims and society as a whole do not shock the sense of justice. This assignment of error is therefore without merit.

Conclusion
For the above reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] T.C. was seventeen years old at the time of the incident but was deceased at the time of trial.