STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-814

STATE OF LOUISIANA

VERSUS

D. T.

**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 06-402
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE
**********

MICHAEL G. SULLIVAN
JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[*] Judges.

Roy, J. dissents and assigns written reasons.

AFFIRMED IN PART; REVERSED IN PART;
AMENDED IN PART; AND REMANDED.

Hon. J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, Louisiana 70560
(337) 369-4420
Counsel for:
State of Louisiana

————————————

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Jeffrey J. Trosclair**
**Assistant District Attorney**
**Courthouse, 5th Floor**
**Franklin, Louisiana  70538**
**(337) 828-4100**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**Post Office Box 2057**
**Natchitoches, Louisiana  71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**D. T.**

**D. T.**
**Walnut - 2**
**Louisiana State Prison**
**Angola, Louisiana  70712**
**In Proper Person:**
**D. T.**

**SULLIVAN, Judge.**

Defendant, D.T., was charged by grand jury indictment with four counts of aggravated rape in violation of La.R.S. 14:42. Each indictment contained one count of aggravated rape. The charges were consolidated for trial. Defendant was tried before a twelve-person jury, which found him guilty as charged on each count of aggravated rape. Thereafter, Defendant was sentenced to serve four consecutive life sentences at hard labor without benefit of probation, parole, or suspension of sentence. Defendant now appeals on the basis of four assignments of error, including insufficiency of the evidence. Additionally, Defendant filed a pro so brief alleging seven assignments of error. Although this brief was post-marked untimely, we will address the assignments in the interest of justice.

## ASSIGNMENTS OF ERROR

1. The evidence was insufficient to support convictions on any of the counts of aggravated rape.

2. The time limitation for initiating prosecution had lapsed.

3. The trial court violated D.T.'s constitutional right to a jury.

4. The sentences imposed by the trial court were cruel, unusual, and excessive, in violation of Article I, § 20 of the Louisiana Constitution of 1974.

## PRO SE ASSIGNMENTS OF ERROR

1. The trial court was without lawful jurisdiction, inasmuch as the prosecution was illegally instituted by an arrest warrant that was obtained contrary to law, and an indictment two months after arrest that was obtained by a factually prejudiced 1ˢᵗ District Attorney, Phillip J. Haney and/or his office.

2. The trial court erred in failing to recuse the District Attorney's office for actual conflict.

3. The trial court erred in refusing to consider Appellant's numerous pro se motions prior to trial which included objection made by Appellant to

1

being prosecuted by Mr. Phillip J. Haney, and/or his Office in his motion for change of venue, merely because he had been assigned an attorney; but which attorney refused to act in his behalf, communicate with him, investigate the case, or interview witnesses.

4.     The trial court erred in refusing to allow defense counsel to adequately question and cross-examine State's witnesses preventing Appellant from confronting his accusers and leading defense counsel to verbally state during trial in the hearing of the jury: "I Give Up!"

5.     The trial court erred in failing to maintain defense counsel's timely objection and motion for declaration of a mistrial based on the improper statement made in the hearing of the jury by the District Attorney in closing arguments using Appellant's failure to testify as "evidence" against him.

6.     The Appellant was denied *Brady* material in the possession of the District Attorney.

7.     [The trial court erred in not insuring that the] Appellant's subpoenas for the production of his nine affiants and seven other family members and relatives with first-hand knowledge issue forth, resulting in his inability to present contradictory testimony in his own defense.

## FACTS

On each count of aggravated rape, the State presented testimony from each victim.  The first victim, M.L., was born September 26, 1975.  The indictment charged that the offense was committed between September 26, 1981 and September 26, 1987. M.L. testified that her uncle, Defendant, put his "private" inside her "private" when she was eight years old.

The second victim, A.B., was born January 3, 1969.  The indictment charged that the offense was committed between January 1, 1974, and January 1, 1979.  A.B. testified that her uncle, Defendant, began having oral and vaginal sex with her when she was five years old.  She alleged that this abuse lasted until she was ten years old. A.B. testified that Defendant performed oral sex on her and made her perform oral

2

sex on him. A.B. also testified that Defendant beat her and threatened to kill her and her family if she told anyone.

The third victim, R.L., was born March 14, 1970. The indictment charged that the offense was committed between March 14, 1978, and March 14, 1984. R.L. testified that her uncle, Defendant, began having vaginal, anal, and oral sex with her when she was eight years old. She alleged that this abuse lasted until she was fourteen years old. R.L. also testified that Defendant beat her and threatened to kill her and her family if she told anyone about the abuse.

The fourth victim, C.C., was born August 24, 1987. The indictment charged that the offense was committed between November 1, 1999, and October 5, 2005. C.C. testified that her stepfather, Defendant, began having vaginal, oral, and anal intercourse with her when she was twelve years old. C.C. testified that this lasted for six years.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, a possible error patent exists due to the trial court's failure to sequester the jury. Louisiana Code of Criminal Procedure Article 791(B) provides, "[i]n capital cases, after each juror is sworn he shall be sequestered, unless the state and the defense have jointly moved that the jury not be sequestered." One of the charges against Defendant is that he committed aggravated rape of A.B. between the period of 1974 to 1979. A review of the statutory history of La.R.S. 14:42 and the applicable jurisprudence suggests the procedural rules required in capital cases should have been applied to the charges of aggravated rape of A.B. during the time period of 1974 to 1976. *See State v. Smith,*

3

01-1027 (La.App. 1 Cir. 2/15/02), 809 So.2d 556; *State v. Mizell*, 05-2516 (La.App. 3 Cir. 6/9/06), 938 So.2d 712; *State v. Marcantel*, 98-825 (La.App. 3 Cir. 12/22/99), 756 So.2d 366, *writ denied,* 00-208 (La. 8/31/00), 766 So.2d 1274. However, because the remaining charges against Defendant were either committed when the penalty for La.R.S. 14:42 was life imprisonment or charged as non-capital offenses of aggravated rape, the procedural rules required in capital cases were inapplicable. *See Mizell* and *Smith*. Nevertheless, since the cases were consolidated for trial, we find that the capital procedural rules should have been applied and that the trial court failed to sequester the jury in accordance with La.Code Crim.P. art. 791(B).

The defense filed a pre-trial motion for sequestration of the jury. A hearing was held, and the trial court denied the motion. Defendant reserved the right to seek review of the issue on appeal but did not assign this issue on appeal. However, this court has recognized this as an error patent and has applied the harmless error analysis. *State v. Porter*, 99-1722 (La.App. 3 Cir. 5/3/00), 761 So.2d 115 and *Marcantel*, 756 So.2d 366.

In this case, the State did not seek the death penalty. Defendant failed to assign this error in his appeal to this court, and he failed to allege or prove any prejudice suffered by this possible error. Accordingly, assuming the trial court erred in failing to sequester the jury, we find this error to be harmless. *See Porter*, 761 So.2d 115, and *Marcantel*, 756 So.2d 366.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his convictions of aggravated rape. Defendant argues that, in the absence of other corroborating evidence, bare allegations and vague testimony of sexual abuse from

4

over thirty years ago should not be sufficient to sustain a conviction of aggravated rape. This is basically a challenge against the victims' credibility, which is outside the purview of this court, as shown by the following jurisprudence.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, citing *State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore:

> In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Johnson*, 00-1552 (La.App. 5 Cir. 3/28/01) 783 So.2d 520, 527, *writ denied*, 01-1190 (La.3/22/02), 811 So.2d 921. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* The credibility of the witnesses will not be re-weighed on appeal. *Id.*

*State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936.

This case involved four indictments. Each indictment contained a time frame in which the alleged rape occurred. It is well settled in Louisiana jurisprudence that proof of any rape committed within this time frame is sufficient to obtain a conviction of aggravated rape against Defendant. *State v. Brauner*, 99-1954 (La.App. 4 Cir 2/21/01), 782 So.2d 52, *writ denied,* 01-1260 (La. 3/22/02), 811 So.2d 920.

5

At the time that three of these offenses were committed, aggravated rape was defined as follows:[1]

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

La.R.S. 14:42, as amended by Acts 1978, No. 239, Section 1.

## AGGRAVATED RAPE OF M.L.

The victim, M.L., was born September 26, 1975; she was thirty-two years old at the time of trial. She testified that her uncle, Defendant, touched her by putting his finger and his "private" in her "private" when she was eight or nine years old. M.L. testified that this happened only one time. During this time period, M.L. shared a home with her mother, brother, and Defendant on Moresi Alley in Jeanerette, Louisiana. At one point, M.L. was questioned again about whether Defendant ever did anything else to her, and she indicated that he did not. The prosecution then asked, "He never touched you?" In response, M.L. stated, "He did touch me. . . . He touched me with his finger inside my private."

On cross-examination, defense counsel questioned M.L. about a prior statement she gave to a detective. M.L. admitted that she told the detective that Defendant put his private inside her private and never mentioned that he used his fingers as she

---

[1]The crimes committed against these victims cover a ten year span in which the aggravated rape statute was amended several times. Although these amendments made substantive changes to the statute, these changes are not relevant to this portion of the analysis, as the state was required to prove the same elements for each victim.

indicated on direct. When defense counsel questioned the victim a second time about what Defendant used to touch her, she indicated that Defendant used his finger and his private. M.L. also indicated that she disclosed this information to her mother, her cousin, A.B., and a doctor when she was younger.

On appeal, Defendant challenges M.L.'s credibility by arguing that her testimony is vague and uncorroborated. As previously stated, the testimony of one witness, if believed by the jury, is sufficient to sustain a conviction, even when no physical or medical evidence is presented. *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writ denied*, 99-3477 (La. 6/30/00), 765 So.2d 1062 and 00-150 (La. 6/30/00), 765 So.2d 1066. In his brief, Defendant particularly points out that some of the victims, such as M.L., testified that they disclosed the rape to their mother or a doctor, but neither of such witnesses was called by the State to corroborate the victims' allegations.

In response, the State relies on *State v. M.J.S.*, 05-380 (La.App. 3 Cir. 11/2/05), 916 So.2d 1215, to argue that "the testimonies of the victims corroborate one another," and further, that "no corroboration of the victims' testimonies was required." *Id.* at 1219. We agree and note that Defendant does not point to any inconsistency regarding the victims' testimony.

In order to convict Defendant of aggravated rape, the State needed to prove that Defendant had sexual intercourse with M.L. when she was under the age of twelve. La.R.S. 14:42. M.L.'s testimony revealed that Defendant "put his private inside her private" in 1981 when she was eight or nine years old. Thus, the jury could have found that the elements of aggravated rape were proven beyond a reasonable doubt. This assignment of error lacks merit.

7

## AGGRAVATED RAPE OF A.B.

A.B. was born January 3, 1969. At trial, she testified that her uncle, Defendant, began raping her when she was five years old. A.B. testified that she remembered being five because she was in kindergarten, and she remembered lying down for a nap and being worried about whether she was going to her grandmother's house that weekend. A.B. testified that during these weekend visits at her grandmother's house, Defendant forced her to have sexual intercourse. Defendant would perform oral sex on A.B. and make her perform oral sex on him. A.B. told the jury, "And he would put the music really, really loud so, when I would scream, no one would hear me." She testified that she tried to fight Defendant and that she told him to stop but "he would keep doing it." A.B. explained that these incidents happened nearly every weekend until she was ten or eleven years old. She also explained that she never told anyone because she was afraid of Defendant; he beat her and threatened to kill her mother, so that she and her sister would then have to move to the grandmother's house.

A.B. testified that she remembered Defendant raping her "in his bedroom . . . a shed behind her grandmother's house, another shed . . . behind that shed, at her Aunt Shirley's house in her bed, in an abandoned house next to her grandmother's [house], in a bus, and in a cane field." She also stated that when these incidents happened, her sister, R.L., and her cousin would be playing outside and her grandmother would either be in the kitchen, sleeping, or reading a book. A.B. also testified that Defendant fed her brownies with white powder. When asked how she felt after eating these brownies, A.B. responded, "I remember I always felt tired when I was there."

A.B. stated that, after being raped, she would clean up and go back outside to play. When asked by the prosecution what she meant by "clean up," she testified, "Go to the bathroom and wipe blood off of me and go play outside. And I didn't say anything to anyone." A.B. also stated if her clothes were bloody, sometimes she tried to clean them off and sometimes she just wore them like that and her grandmother would wash her clothes. A.B. was then questioned by the prosecutor, "When [D.T.] would force you to perform oral sex on him, what would happen afterwards?" She said, "Sometimes he would put some stuff all over - his stuff all over my face. And after he finished, I'd wipe my face off and go play again."

The prosecutor questioned A.B. about the last time she was raped by the Defendant, as follows:

Q. [A.B.], when was the last incident that you recall happening?

A. With me, the very last?

Q. That you remember.

A. I can't - I can't answer that question, because I don't know the very last time.

Q. How old were you?

A. When it ended?

Q. Around ten or twelve - sorry - ten or eleven, around that age. I know nothing happened after that.

Q. [A.B.], did you ever stop going by your grandmother's house?

A. Yes.

Q. What age were you?

A. Around ten or eleven. That's when it stopped, when we stopped going.

9

On appeal, Defendant challenges A.B.'s credibility by arguing that her testimony is vague and uncorroborated. As previously stated, the testimony of one witness, if believed by the court, is sufficient to sustain a conviction, even when no corroborating evidence is presented.

In order to convict Defendant of aggravated rape, the State needed to prove that Defendant had sexual intercourse with A.B. when she was under the age of twelve. La.R.S. 14:42. According to A.B.'s testimony, Defendant began having sex with her when she was five years old, around 1974, and stopped having sex with her when she was ten years old, around 1979. As such, we find that her testimony is sufficient to establish that Defendant committed aggravated rape from 1974 through 1979. While A.B.'s testimony also indicates that she resisted to the utmost but was overcome by force, this element is not necessary to maintain the conviction because she was under the age of twelve at the time of the offense. This assignment of error lacks merit.

### AGGRAVATED RAPE OF R.L.

R.L. was born March 14, 1970; she was thirty-seven years old at the time of trial. R.L. and A.B. are siblings. R.L. testified that, as a child, she visited her grandparents every weekend. According to R.L.'s testimony, it was during these visits that she was raped by her uncle, Defendant. She stated that when she was around eight years old, Defendant forced her to have vaginal, anal, and oral sex with him. After a series of questions posed by the prosecution, R.L. clarified for the jury, stating, "He would stick his thing in my private. . . . He would place it [his penis] in my behind and in my mouth." The prosecution then asked, "When you say that he placed it in your behind, what do you mean?" R.L. replied, "Anally."

10

R.L. went on to state that she did not tell anyone because she was afraid. She testified that she was scared for her life. In particular, R.L. stated that Defendant threatened to kill her and her family. He also threatened to kill her mom, so that R.L. and her sister would have to live with Defendant and their grandmother. According to R.L., Defendant threatened her with "the belt," pulled her hair, and punched her in the head.

R.L. testified that she remembered the abuse occurring in Defendant's bedroom. Although others were around in other parts of the house, R.L. stated that nobody ever knew about it. When asked by the prosecution, "How was he able to rape you?" The victim explained that,

> When he would take me in his room, he would put the music really loud to where nobody would hear me scream. Or he would stuff a red handkerchief in my mouth so that no one could hear me. . . . He handcuffed my arms on top of my head. . . . So that I wouldn't fight with him to try to get away or stop him.

R.L. also mentioned that Defendant made them eat brownies baked with marijuana. When the prosecution asked R.L. about other specific incidents of abuse, she stated:

> I remember one time . . . . he took me in a cane field and he did all kind of things to me in the cane field. That's when he stuck a bottle up me and also a pipe. And it hurt, and I cried and cried and said that it hurt. And he told me, "Keep crying. Nobody can hear you."
>
> . . . .
>
> When I came back to my aunt's house, I was full of blood. And I went to the bathroom when everybody was sleeping, and I took my clothes off and I put it in the closet behind a cardboard box and hid my clothes until I could throw it away without anybody knowing. My aunt found it, my play clothes. . . . And I said it was mine and I had started the time of the month. And my aunt said, "You started the time of the month?" I said, "Yes, I did." But I wanted her to ask me what happened, because I had blood even on the top of my shirt.

R.L. also testified to abuse occurring in a bathroom at her grandmother's house. According to R.L., a door in Defendant's room was linked to the bathroom located in the hall. R.L. testified that if Defendant thought she was taking a bath or using the bathroom, "[h]e would come and get me." She further explained that this is when Defendant would "do bad things" to her. R.L. stated that during these events her sister and her cousin were playing outside and her grandmother would be lying in her bed reading a book or cooking in the kitchen. When asked, "What, if anything, did [D.T.] do to prevent others from hearing what was going on?," she again explained that Defendant played his music loud or everyone would go play outside and they would be left alone in the house. She testified that if she tried to fight back, Defendant would slap or punch her.

With respect to the rape that occurred in the cane field, R.L. testified that she could not remember her exact age but that she was between eight and twelve, "cause that's when the worst happened." She further testified that the abuse stopped when she was fourteen years old.

On appeal, Defendant challenges R.L.'s credibility by arguing that her testimony is vague and uncorroborated. As previously stated, the testimony of one witness, if believed by the court, is sufficient to sustain a conviction, even when no corroborating evidence is presented.

In order to convict Defendant of aggravated rape, the State needed to prove that Defendant had anal or vaginal sexual intercourse with R.L. when she was under the age of twelve. La.R.S. 14:42. R.L.'s testimony revealed that Defendant forced her to have anal and vaginal intercourse from the time she was eight years old until she was fourteen. Accordingly, we find the evidence is sufficient to establish that

Defendant committed aggravated rape from 1979 through 1984. While R.L.'s testimony also indicates that she resisted to the utmost but was overcome by force, this element is not necessary to maintain the conviction because she was under the age of twelve at the time of the offense.

## AGGRAVATED RAPE OF C.C.

The indictment charged Defendant with aggravated rape of C.C. from November 1, 1999, to October 5, 2005. As the statute existed in 1999,[2] aggravated rape was defined as follows:

> Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but her resistence is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the apparent power of execution.
>
> (3) When the Defendant is prevented from resisting the act because the offender is armed with a dangerous weapon.
>
> (4) When the victim is under the age of **twelve** years. Lack of knowledge of the victim's age shall not be a defense.

La.R.S. 14:42, as amended by 1997 La. Acts No. 898, Section 1 (emphasis added). With respect to C.C., Defendant argues that C.C.'s testimony is insufficient to prove the elements of aggravated rape.

---

[2]In 2003, the fourth paragraph of the statute was amended to read, "When the victim is under the age of **thirteen** years." 2003 La. Acts No. 301, Section 1 (emphasis added).

C.C. was born August, 24, 1987; she was twenty years old at the time of trial. According to her testimony, C.C. was twelve years old the first time her stepfather, Defendant, had sexual intercourse with her. C.C. described it to the jury, as follows:

> The first incident was when I was twelve. It was right after him and my mamma got married. And he woke me up out of my bed, and he brought me in the living room and he took off my pants and he pushed me over on the sofa. And I asked him to stop, and he just kept going.

C.C. went on to clarify some of her statements at the request of the prosecution, and she specifically stated that Defendant "stuck his penis in my vagina." C.C. told the prosecutor that during this particular incident her face was buried in the sofa.

C.C. explained to the jury that this type of abuse continued for a number of years. In particular, she stated, "It prolonged over six years where I had to have intercourse with him, perform oral sex, and even had to have anal sex with him, just to be able to have freedom." When the prosecutor asked C.C. what she meant by "freedom," she replied, "To be able to go places or to be able to go sleep somewheres. Or if I didn't do anything by the time I had my car, I couldn't take my car nowheres." She further explained that Defendant would give her cigars and buy her cigarettes in exchange for sex. On one occasion, C.C.'s mother walked in on Defendant performing oral sex on her, but according to C.C., that only resulted in her mother getting mad at her.

C.C. moved out of her mother's house on October 5, 2005, to live with her boyfriend. It was during this time that C.C. told her mother, as well as A.B., about the sexual abuse. She also testified that after confiding in A.B., she was contacted by the police and, as a result, she gave a statement to the police. C.C. testified that she moved back home to live with her mother and her sister on September 24, 2006.

14

On October 17, 2006, C.C. wrote a letter to the prosecutor asking to be removed from Defendant's case. The letter expressly stated that she did not want to testify against Defendant because her relationship with her mother was more important. C.C.'s letter also stated that she felt violated and used by A.B. C.C. testified that this letter was written while she was living with her mother. After the letter was read to the jury, the prosecution asked C.C., "In this letter dated October 17, 2006, did you deny that anything happened?" C.C. replied, "No, ma'am."

Next, the prosecution called attention to an affidavit dated January 10, 2007. In this affidavit, C.C. made a second request to be removed from Defendant's case. She also accused A.B. of being "conniving," stating, "she convinced me to talk to the cops and told me what I needed to say to get him convicted." The affidavit also stated that A.B. tricked her into saying that Defendant molested her. C.C. testified that she was living with her mother when she wrote the affidavit. When the prosecution asked C.C., "Is this [affidavit] true," she responded in the negative.

C.C. again moved out of her mother's home on January 18, 2007, to live with her boyfriend. She testified that during the time that she lived with her mother, Defendant started writing her letters, and she wrote him back. She also stated that she visited Defendant while he was in jail, stating "I felt that I could forgive him for what he done."

C.C. testified that Defendant had sex with her "[b]etween 1,500 and 2,000 times." She told the court that these acts would happen in the living room or in her mom's room. She explained that the abuse happened mostly at night, "A lot of the times, nobody was home or my mom was sleeping." When asked whether Defendant

15

ever told her anything about disclosing his actions to others, C.C. replied, "No, Ma'am. He just took my freedom away from me."

In order to convict Defendant of aggravated rape, the State needed to prove that Defendant had sexual intercourse with C.C. when she was under the age of twelve. La.R.S. 14:42. C.C.'s testimony revealed that Defendant had sex with her in 1999 when she was twelve years old. Thus, the elements of aggravated rape were not proven beyond a reasonable doubt. We find, therefore, that Defendant's conviction on this count should be reversed.

"Pursuant to La.Code Crim.P. art. 821(C), an appellate court that finds 'the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense . . . may modify the verdict and render judgment of conviction on the lesser included responsive offense.'" *State v. Teague*, 04-1132, p. 9 (La.App. 3 Cir. 2/2/05), 893 So.2d 198, 205.

Attempted aggravated rape is a responsive offense to aggravated rape. La.R.S. 14:27, La.R.S. 41:42. However, based on the same reasoning stated above, the victim's testimony is insufficient to prove the elements of this offense.

Forcible rape is a responsive offense to aggravated rape. La.R.S. 14:42.1. At the time the offense was committed, forcible rape was defined as follows:

> A. Forcible rape is rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

La.R.S. 14:42.1, as amended by Acts 1997, No. 862, Section 1.

Accordingly, the State had to prove beyond a reasonable doubt that Defendant had (1) anal or vaginal sexual intercourse (2) without the lawful consent of C.C. and (3) where C.C. was prevented from resisting the act by force under circumstances where she reasonably believed that such resistence would not prevent the rape.

C.C. testified that Defendant pushed her over the couch and had vaginal sexual intercourse with her. She also stated that her face was buried in the sofa during this incident. C.C. testified that her mother was in the room sleeping but she did not call out; she pushed up from the couch and asked Defendant to stop. In turn, Defendant pushed C.C. back down and kept going. During this incident and the six years of abuse that followed, C.C. testified that Defendant never threatened her. C.C. also testified that she had sex with Defendant in order to be able to go places, use the car, and get cigarettes.

In *State v. Schexnaider*, 03-144, p.10 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 457, the victim testified that "Defendant forcefully pushed her back and got on top of her. She testified she could not push the Defendant back because he was bigger than her, and she was pinned under the Defendant's weight." The court in *Schexnaider* held that this testimony and other evidence presented at trial established that Defendant used sufficient force against the victim to sustain Defendant's conviction. In making this determination the court made the following comments:

> The facts in the case before this court are more similar to those in *State v. Wilkinson*, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, *writ denied*, 00-3161 (La.10/12/01), 799 So.2d 494. Although, in *Wilkinson*, a jury convicted the defendant of simple rape, in reviewing his conviction, the Fifth Circuit observed that evidence presented by the state was sufficient to convict the defendant of forcible rape.

17

The evidence offered by the State shows that the Defendant forcibly grabbed C.C.,[3] threw her to the ground, pushed down her clothing, laid on top of her and penetrated her vaginally several times. C.C., a fourteen-year-old, was frightened, weighted down by the backpack and did not know whether any action on her part would have caused him to do additional harm. She was thrown into a secluded area and could have reasonably believed that screaming would be futile.

Similar testimony from Coffman, police officers, and Dr. McCaslin, confirm that C.C. was extremely upset, but consistent, when relating the details of the incident. Further, medical evidence showed that C.C. sustained a tear at the bottom of the hymen consistent with attempted penetration.

*Id*. at p. 15, 766-67.

The court held that, given the facts presented at trial, the evidence was sufficient to support the elements of forcible rape.

In *State v. Hawkins*, 504 So.2d 1132 (La.App. 5 Cir.1987), the victim was riding a bike near dark when the defendant grabbed him and his bike and brought the victim and the bike upstairs into an apartment. Once inside the apartment, the defendant locked the door, undressed himself and then the victim, and put his penis inside the victim's rectum for ten minutes. The victim testified he was forced against his will into the apartment, he was afraid and tried to escape, but the defendant was on top of him, thus, he could not move. The court held the evidence supported the verdict of forcible rape.

We find the facts in this case are more like those in *Wilkinson*, and *Hawkins*.

*Schexnaider*, 852 So.2d at 458-59.

Accordingly, we find C.C.'s testimony establishes that Defendant used sufficient force against her to prove beyond a reasonable doubt the elements of forcible rape.

---

[3]The victim in *Wilkinson* has the same initials as the victim in this case.

18

**TIMELY PROSECUTION**

As his second assignment of error, Defendant contends that the time limitations for the institution of prosecution had lapsed with respect to the cases involving A.B., R.L., and M.L. Defendant admits in his brief that this error was not raised in the trial court, but he seeks review pursuant to La.Code Crim.P. art. 577, which provides, in relevant part, as follows:

> The issue that a prosecution was not timely instituted may be raised at any time, but only once, and shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial.

In response, the State contends that Defendant failed to file a plea of prescription, a motion to quash, or a bill of particulars before trial and, as a result, he has waived the issue for appellate review. We find Defendant's failure to file such pleadings does not preclude this court from reviewing the issue. Comment (b)(4) to La.Code Crim.P. art. 535 provides that if Defendant did not previously file a motion to quash urging that the time limitation for institution of prosecution has expired, this defense "may be raised on appeal." Accordingly, we proceed with an analysis of this issue as it relates to these three victims.

In 1977, the aggravated rape statute was amended to provide a penalty of life imprisonment without benefits, but the legislature did not amend La.Code Crim.P. art. 571 to provide that there was no time limitation to prosecute such crimes until 1984. With respect to the cases involving M.L., A.B., and R.L., Defendant contends that the evidence in the record is insufficient to prove that he committed aggravated rape after the 1984 amendment. Consequently, Defendant argues that the State's right to prosecute these cases expired long before the State sought bills of indictment. This argument is presumably based on La.Code Crim.P. art. 572, which provides that a

19

felony necessarily punishable by hard labor must be prosecuted within six years from the date of the offense. However, Defendant's argument is not supported by Louisiana jurisprudence.

In *State v. Romero*, 96-777 (La.App. 3 Cir. 3/5/97), 692 So.2d 609, this court was faced with a similar issue. In *Romero,* the defendant was charged with one count of molestation of a juvenile occurring between the years of 1983 and 1986, but he was not indicted until 1993. At the time these offenses were committed, the prescriptive period for the institution of prosecution was four years under La.Code Crim.P. art. 572(2). Therefore, the State's right to prosecute these crimes originally prescribed between the years of 1987 and 1990. However, before that period ended, the legislature amended La.Code Crim.P. art. 573 to include molestation of a juvenile in the list of crimes for which the time limitations established by La.Code Crim.P. art. 572 shall not commence to run until the relationship or status involved has ceased to exist. The enactment was effective September 1, 1987. Thus, this court found the amendment did not apply to any sexual acts constituting molestation which had prescribed at the time of the effective date of the enactment (acts occurring between January 1, 1983 and August 31, 1983). However, as to those sexual acts constituting molestation occurring after August 31, 1983, the time limits to prosecute the defendant were extended to four years from the date the defendant ceased domination and control over the victim, as a result of the above-referenced amendment to La.Code Crim.P. art. 573.

This court in *Romero* went on to discuss the further extension of the prescriptive period as a result of a 1988 amendment to La.Code Crim.P. art. 573, which eliminated the requirement that the victim be under the domination or control

20

of the offender; and a 1993 amendment, which deleted all sex offenses from La.Code Crim.P. art. 573, created a new article, La.Code Crim.P. art. 571.1, and changed the prescriptive period for sex offenses involving minors to ten years from the date of the victim's seventeenth birthday.

In *Romero,* the court stated:

> It is well settled law that these legislative extensions discussed here are retroactive. In *State v. Adkisson*, 602 So.2d 718 (La.1992), the Louisiana Supreme Court recognized that the Legislature could amend La.Code Crim.P. art. 573 and extend the time limit within which the state could institute prosecution, but only as long as the amendment came into effect before the statute of limitations accrued. *Id.* at 719.

> In cases arising after *Adkisson*, the amendment of La.Code Crim.P. art. 573, and enactment of La.Code Crim.P. art. 571.1, the courts have had to calculate when the statute of limitation accrues and if the changes in the law have extended the time within which the state may institute prosecution. *See, e.g. State v. Hughes*, 94-1364 (La.App. 4 Cir. 12/28/94); 648 So.2d 490, *writ denied*, 95-255 (La.3/24/95), 651 So.2d 292; *State v. Farris*, 95-570 (La.App. 1 Cir. 11/16/95), 666 So.2d 337.

> In *State v. Ferrie*, 243 La. 416, 144 So.2d 380, 384 (1962), the Louisiana Supreme Court stated as follows:

> > [I]n the absence of a statute of limitations, the State retains the right to prosecute for crimes indefinitely. But when a right of grace has been extended the State relinquishes the right to prosecute once the statute of limitations has run; until it does run, the State's right to prosecute is retained and may be extended at the will of the state.

*Romero*, 692 So.2d at 611-12.

In light of *Romero, Adkisson,* and *Ferrie,* we find that there was no time bar on the institution of prosecution for M.L., A.B., and R.L. in this case. M.L.'s testimony clearly indicated that Defendant raped her in 1981, and that this was the only incident of rape. In 1981, aggravated rape was punishable by life imprisonment without

21

benefits and subject to a six-year prescriptive period.[4]  Defendant argues that the

State's right to prosecute him for the offense against M.L. expired in 1987.  The last

acts of aggravated rape involving A.B. and R.L. occurred in 1979 and 1984

respectively.  Defendant argues that the State's right to prosecute prescribed in 1985

for the offense against A.B. and in 1990 for the offense against R.L.  However, in

1984, while the original prescriptive periods for the offenses against M.L., A.B., and

R.L. were still running, La.Code Crim.P. art. 571 was amended to remove the time

limitations on prosecution for aggravated rape.  Thus, applying *Romero*, the unlimited

prescriptive period should apply to the offenses against M.L., A.B., and R.L. because

the original period was extended before it expired.  Therefore, this assignment of

error lacks merit.

## RIGHT TO A JURY

As his third assignment of error, Defendant contends that the trial court

violated his right to a jury.  In particular, Defendant asserts that the trial court erred

in making a factual determination as to when the offenses occurred and, thereby,

"usurped a function of the jury."

Defense counsel made the following comments at the sentencing hearing:

> [T]his case consisted of four separate indictments which were consolidated for trial. . . .  Each of the indictments contained a range of years for the one count of aggravated rape contained in each.  **The verdict forms did not require that the jury specify the precise date or year of the offense upon which is [sic] based its verdict on each indictment.**  As you know, the jury did return verdicts of guilty as charged on all four indictments.

(Emphasis added).

---

[4]La.R.S. 14:42, as amended by Acts 1977, No. 343, Section 1.

A review of the appellate record reveals that defense counsel did not object to the verdict form or the jury verdict when rendered, and Defendant did not file a motion for a new trial or motion in arrest of judgment. Thus, this issue of whether the verdict form should have required the jury to specify the precise date of the offense has not been properly preserved for appellate review. La.Code Crim.P. arts. 801, 841. *See also State v. Lewis*, 00-53 (La.App. 4 Cir. 12/13/00), 776 So.2d 613, *writ denied*, 01-381 (La. 10/5/01), 798 So.2d 966.

Furthermore, in *Brauner*, 782 So.2d at 73 (*quoting State v. Dixon*, 628 So.2d 1295, 1299 (La.App 4 Cir. 1993) (citations omitted)), the court stated:

> The date of the offense is not an essential element of the crime of aggravated rape. In a continuing relationship of this type, exact dates often cannot be supplied. . . . It was not necessary for the State to specify the date of an offense in the indictment or the bill of particulars, and any one of the offenses committed within that time frame could be proven to obtain a conviction for the crime with which defendant was charged.

In *Romero*, 692 So.2d 609, this court held that where the defense did not file a bill of particulars to have the time range clarified to provide specific dates, the prosecution has to prove only one act of the alleged offense occurred during that time range.

In this case, Defendant did not file a bill of particulars. We have previously determined that the evidence was sufficient to show that aggravated rape was committed within the time frame in the indictments. Thus, this assignment of error lacks merit.

<u>**EXCESSIVE SENTENCE**</u>

Defendant's final assignment of error is a claim of excessive sentence. On appeal, Defendant asserts that the sentences imposed for the convictions involving A.B., R.L., and M.L. should be reduced to a sentence of twenty years at hard labor in

23

accordance with *State v. Lee*, 340 So.2d 180 (La.1976), which addressed a conviction for aggravated rape that occurred in 1974.

In his Motion to Reconsider Sentence, Defendant asserted the same argument, but only in relation to the sentence imposed for the conviction involving A.B. As such, his excessiveness claim, as it relates to R.L. and M.L, is barred by La.Code Crim.P. art. 881.1. However, in the interest of justice, this court has chosen to review such an assignment as a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

With respect to the case involving A.B., Defendant was sentenced to life imprisonment without benefits. This has been the mandatory penalty for a conviction of aggravated rape since the statute was amended in 1977 by La. Acts No. 343,

24

Section 1.  Defendant asserted the following argument in his Motion to Reconsider

Sentence:

> [T]he testimony adduced at trial most reasonably prompted the jury to
> find that the aggravated rape occurred during 1974, when the mandatory
> penalty for aggravated rape was unconstitutional and the jurisprudence
> required that the maximum penalty of twenty years at hard labor for the
> then lesser included offense was the appropriate penalty under *State v.*
> *Lee*, 340 So.2d 180 (La.1976).

As previously established, A.B.'s testimony is sufficient to prove that

Defendant committed aggravated rape from 1974 through 1979.  Thus, the last act of

aggravated rape occurred in 1979, which would have been after the effective date of

the mandatory life sentence.  Thus, this assignment of error lacks merit.

With respect to the offenses involving M.L and R.L., Defendant was sentenced

to life imprisonment without benefits.  After reviewing the evidence, the jury could

have found that aggravated rape occurred in 1981 for M.L. and 1984 for R.L.  During

these times, the mandatory penalty for aggravated rape was life imprisonment without

benefits.

In *State v. Waguespack*, 06-410, p. 12 (La.App. 3 Cir. 9/27/06), 939 So.2d 636,

644, this court addressed this precise issue and made the following comments:

> Louisiana Revised Statute[s] 14:42 provides a mandatory life
> sentence for aggravated rape cases in which the death penalty is not
> sought or not otherwise available.  In *State v. Foley*, 456 So.2d 979, 981
> (La.1984), the supreme court discussed the penalty for aggravated rape
> as follows:
>
> > The mandatory life sentence for aggravated rape is
> > a valid exercise of the state legislature's prerogative to
> > determine the length of sentence for crimes classified as
> > felonies.  *State v. Prestridge*, 399 So.2d 564 (La.1981);
> > *State v. Farria*, 412 So.2d 577 (La.1982); and *State v.*
> > *Talbert*, 416 So.2d 97 (La.1982).
>
> Based on *Foley*, Defendant's life sentence is mandatory and can
> not be excessive.  Accordingly, this assignment of error lacks merit.

25

In light of the courts' reasoning in *Waguespack* and *Foley*, Defendant's sentence is not excessive, and this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NO. 1

As his first assignment of error, Defendant contends:

> The trial court was without lawful jurisdiction, inasmuch as the prosecution was illegally instituted by an arrest warrant that was obtained contrary to law, and an indictment two months after arrest that was obtained by a factually prejudicial 1st District Attorney, Phillip J. Haney and/or his office.

In support of this contention, Defendant primarily argues that, prior to the grand jury proceeding, the district attorney's office was in possession of several sworn statements from nine witnesses whose testimony would undermine the credibility of the victims and their accusations. Defendant contends that the district attorney did not present these witnesses or their statements to the grand jury and, as a result, his indictment was based upon biased accusations.

Contrary to Defendant's argument, at least two of the nine witnesses testified on his behalf at the grand jury proceeding. At the request of Defendant, the trial court conducted an *in camera* inspection of the grand jury transcript to determine whether it contained any exculpatory material which must be produced to Defendant. According to the court's declaration, C.C.'s sister and mother testified at the grand jury proceeding and contradicted many of C.C.'s allegations. The declaration also revealed inconsistent statements concerning the testimony of two other witnesses. Thus, Defendant has failed to prove that he suffered any prejudice as it relates to the grand jury proceeding.

26

Defendant also makes a general assertion that his arrest warrant was obtained contrary to law but provides no factual support. Thus, this assignment of error has no merit.

### PRO SE ASSIGNMENT OF ERROR NO. 2

Defendant's second assignment of error is based upon the assertion that "the trial court erred in failing to recuse the District Attorney's office for actual conflict." In 1992, Defendant was charged with conspiracy to commit first degree murder of then Assistant District Attorney, Phillip J. Haney. Although Defendant was incarcerated for more than a year, the charge was eventually dropped for lack of evidence. Haney has since been elected as the District Attorney for the Sixteenth Judicial District. Thus, Defendant asserts that the district attorney's office should have been recused based upon this conflict of interest and in accordance with La.Code Crim.P. art. 680.

In *State v. Chavez*, 540 So.2d 992 (La.App. 2 Cir. 1989), the second circuit addressed a similar issue where the defendant faced being prosecuted by an attorney who had previously represented the defendant in the same matter. The court made the following comments when addressing whether the defendant had waived his right to request recusal.

> Despite a lack of Louisiana jurisprudence addressing the issue of waiver of conflict-free counsel in the context of an attorney's switching sides in a criminal prosecution, it is plain that for a defendant to knowingly and intelligently waive his right to request recusal, the defendant must be aware of the implications of the conflict of interest as well as the defendant's right to request recusal. . . .
>
> . . . In particular, the trial court ordinarily should engage in a colloquy with the defendant, advise the defendant of the implications of his former counsel's representing the state in his prosecution, and attempt to obtain a narrative response from the defendant. The narrative response should indicate that the defendant has been advised of his right

27

to request recusal, that he understands the implications of his former attorney representing the state, that he has discussed the matter with an attorney, and that he voluntarily waives his right to request a recusal.

*Id*. at 995-96.

In this case, a review of the record shows that Defendant waived his right to request recusal. This matter was taken up by the court on September 27, 2007, and the following colloquy took place:

Q.     Okay. The question becomes that we're addressing today: Are you willing to understand and okay Phil Haney's office prosecuting this matter against you despite what happened in the past?

BY MS. DUNNING:

Your Honor, I have advised Mr. [T.] - I see he's - I have discussed this with him twice. I have advised Mr. [T.] that if he raises an objection and you sustain that objection, that then the Attorney General's Office would step in. And in conjunction with that, I would like to also put on the record that I have also explained to Mr. [T.] that electing not to have Mr. Haney's office prosecute him would not entail a change of venue, that that is a totally separate issue.

BY THE COURT:

Right.

(ADDRESSING DEFENDANT [T.]:)

Q.     Okay. So, Mr. [T.], she states it correctly. If Mr. Haney's office is recused and you want his office recused because of what happened between you and Mr. Haney previously, then the Attorney General has two choices. He can assign another DA's Office to handle the matter, he can appoint a special DA or a special lawyer to handle the matter as a prosecutor, or he can have some prosecutor from his office in Baton Rouge handle the matter. So that would be the choices he would have about who would handle the prosecution against you. It would not involve changing the venue or the location of the charges, because the alleged crime was committed in this parish so it has to be tried in this parish, unless of course you could prove that there's some objection to venue because of publicity, in the case. That has nothing to do with who's prosecuting. You understand?

28

A.    Yes, sir.

Q.    If you wanted to say you couldn't try the case in this parish because it was too much publicity in the newspaper and the whole jury panel was poisoned as a result of excessive publicity, it might be changed to another parish. But that would not change who prosecutes. You understand?

A.    Yes, sir. Miss Dunning explained all of that to me.

Q.    All right. So are you willing to waive any objection to Mr. Haney's office prosecuting this case?

BY MS. DUNNING:

       And that's entirely up to you, Mr. [T.]

BY DEFENDANT [T.]:

A.    On your word, yeah.

BY THE COURT:

       (ADDRESSING DEFENDANT [T.]:)

Q.    On her advice, you're willing to waive that; is that correct, Mr. [T.]?

A.    Yes, sir.

Accordingly, in light of the court's reasoning in *Chavez*, Defendant made a knowing and voluntary waiver of his right to request recusal. The record clearly indicates that Defendant discussed the matter with his attorney and that he understood the implications of his decision. Thus, this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NO. 3

As his third assignment of error, Defendant contends that the trial court erred in refusing to consider his pro se motions because he was represented by counsel. Defendant asserts that he objected to being prosecuted by the district attorney's office

in his motion for change of venue but that his attorney refused to act on his behalf, to communicate with him, and failed to investigate the case or interview witnesses.

When Defendant initially filed his pro se motions, he was represented by attorney Craig Colwart. After the denial of two pro se motions seeking the appointment of new counsel, Defendant filed a writ application with this court. After review, this court granted Defendant's writ and remanded the matter back to the trial court. *See State v. D.T.*, an unpublished writ bearing docket number 07-658 (La.App. 3 Cir. 6/20/07). Thereafter, the trial court granted Defendant's request for new counsel and appointed Nancy Dunning to represent Defendant. In making this determination, the trial court also ordered that "all motions previously filed by [the Defendant] be discussed with his new attorney and that they determine which, if any, of those they desire to have heard and inform the court of their desire no later than September 26, 2007." Our review reveals that several motions were filed by Defendant's new counsel. At a hearing held on September 28, 2007, the court ruled upon many of these motions and addressed the issue of whether Defendant had any objection to being prosecuted by the District Attorney's office. As previously mentioned, Defendant waived his right of recusal at the direction of his attorney. Thus, any pro se motions previously filed by Defendant were waived after he consulted with his attorney. Accordingly, this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NO. 4

Defendant asserts that "the trial court erred in refusing to allow defense counsel to adequately question and cross-examine State's witnesses preventing Appellant from confronting his accusers and leading defense counsel to verbally state during trial in the hearing of the jury: 'I Give Up!'" We find that Defendant is incorrect in

his assertion. According to the record, defense counsel cross-examined only two victims and at no point during cross-examination did defense counsel state "I give up!"

Our review also reveals that there is no indication that the trial court limited cross-examination. At one point, defense counsel asked C.C. whether she ever made complaints about other grown men making sexual advances toward her. In response to the State's objection, defense counsel stated that she wanted to demonstrate that the victim has a history of making sexual allegations against other family members and then recanting. The trial court sustained the State's objection on the grounds that evidence of the victim's past sexual behavior is not admissible under La.Code Evid. art. 412 and that there was no preliminary hearing held to determine the admissibility of such evidence prior to trial. Thus, we find that this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NO. 5

In Defendant's fifth assignment of error, he asserts that the trial court erred in failing to maintain defense counsel's objection and motion for a mistrial. In particular, Defendant contends that this motion was based upon the district attorney's using his failure to testify as evidence against him in closing arguments. There is no mention in the record that an objection or motion for a mistrial was ever made by defense counsel during or after the state's closing arguments. Thus, this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NO. 6

As his sixth assignment of error, Defendant contends that he was "denied *Brady* material in the possession of the District Attorney." Defendant contends that

nine witnesses provided a signed statement or affidavit in which they stated that C.C. has a history of making false accusations of sexual abuse against numerous family members and that A.B. and R.L., Defendant's nieces, were sexually abused by their mother when they were infants.

In *State v. Mayeux*, 06-944, p.15 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, 531, this court made the following comments:

> The United States Supreme Court has determined that there are three components of a true *Brady* violation: The evidence must be favorable to the accused, either exculpatory or impeaching in nature; the evidence must have been suppressed by the State either willfully or inadvertently; and there must be prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *State v. Louviere*, 00-2085 (La.9/4/02), 833 So.2d 885, *cert. denied*, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003).

Other than making a general allegation, Defendant does not demonstrate that these statements, whether exculpatory or not, were ever suppressed by the State. In fact, Defendant admits in his brief that he caused these statements to be sent to the district attorney and his defense counsel in January and February of 2006, prior to the grand jury proceedings. It follows that Defendant was aware of these statements throughout the entire criminal prosecution. Therefore, Defendant has failed to prove a *Brady* violation, and this assignment of error has no merit.

Defendant also points out that these witnesses were never interviewed by his attorney and that their statements were never entered into the record by his attorney. We find that this argument would be better addressed by a claim of ineffective assistance of counsel. Because this issue would require an evidentiary hearing, this is "a matter more properly addressed in an application for post conviction relief." *State v. F.B.A.*, 07-1526, p. 9 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1013

32

(*quoting State v. Griffin*, 02-1703, p. 8 (La.App 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/17/03), 857 So.2d 515).

### PRO SE ASSIGNMENT OF ERROR NO. 7

Under his seventh assignment of error, Defendant contends he was denied compulsory service in obtaining the production of witnesses at trial and this resulted in his inability to present contradictory testimony in his own defense. In support of this contention, Defendant includes a list of nine witnesses and explains the facts of each witness's testimony. Defendant contends the names, addresses and phone numbers of these nine witnesses were provided to the District Attorney, the court, and the first Indigent Defender Board (IDB) attorney appointed to his case. Despite having this information, Defendant complains that these witnesses were never interviewed during the investigation, nor were they called to testify at trial.

Defendant also indicates these witnesses were not called to testify because his second IDB attorney was "given inadequate time to prepare a defense against four Aggravated Rape charges." On October 5, 2007, defense counsel filed a written motion for continuance on the grounds that she needed more time to prepare a defense for Defendant. In this motion, defense counsel reminded the trial court that she was appointed on September 14, 2007, following Defendant's pro se motion for new counsel, which meant that she had only five weeks to prepare for the October 22 trial date. She also pointed out that, based upon an initial review of Defendant's IDB file, she discovered that Defendant's former counsel "concluded that only a few lines of inquiry needed investigation in order to prepare Defendant's defenses." However, after speaking with Defendant and his wife, current counsel urged that additional time would be needed to follow up on leads and to subpoena witnesses.

33

Defendant's pro se Assignment of Error No. 6 addresses his contention concerning the first IDB attorney's failure to interview, call or subpoena witnesses. As explained above in response to that assignment of error, that argument is more proper for an application for post conviction relief.

While we recognize Defendant's right to interview, subpoena and call witnesses in his defense, we find Defendant's second attorney had adequate time to address the issues regarding these potential witnesses.

> Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution (1974) guarantee a criminal defendant the right to compulsory process and to present a defense. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. *State v. Gordon*, 01-734 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, *writs denied*, 2002-0362 (La.12/19/02), 833 So.2d 336 and 2002-0209 (La.2/14/03), 836 So.2d 134.

*State v. Jackson*, 07-84, p. 9 (La.App. 5 Cir. 6/26/07), 963 So.2d 432, 438, *writ denied*, 07-1666 (La. 1/25/08), 973 So.2d 754.

> The trial court has great discretion in deciding whether to grant a continuance, and its ruling will not be overturned absent an abuse of discretion. *State v. Bourque*, 622 So.2d 198 (La.1993); *State v. Champion*, 412 So.2d 1048 (La.1982); La.C.Cr.P. art. 712. Further, we generally will not reverse a conviction due to an improper ruling on a continuance unless there is a showing of specific prejudice to the defendant as a result of the denial of the continuance. *State v. Strickland*, 94-0025 (La.11/1/96), 683 So.2d 218; *State v. Knighton*, 436 So.2d 1141 (La.1983).

*State v. Castleberry*, 98-1388, p. 11 (La. 4/13/99), 758 So.2d 749, 759-60, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220 (1999).

At a hearing on October 5, 2007, the trial court denied the motion to continue and gave the following reasons:

> All right. I'm looking at the court file. The defendant was indicted on March 10, 2006. He's been represented by the ID Board since April 3, 2006. You have two weeks left before the trial. You allege your

investigator has been sitting with him at the jail for some reason. But, I mean, you can handle your investigator how you want to handle him, but you do have an investigator at your disposal. You have other lawyers at your disposal. You have yourself at your disposal. You have two weeks to finish doing what you need to do. I think you have plenty time. The request for continuance is denied.

The Louisiana Supreme Court has held that, based upon the facts and circumstances of each particular case, having only one month to prepare for trial may be insufficient grounds for granting a motion for continuance. *See State v. Robicheaux*, 412 So.2d 1313 (La.1982); *State v. Ordonez*, 395 So.2d 778 (La.1981); *State v. Devenow*, 220 So.2d 78 (La.1969); *see also State v. Lee*, 275 So.2d 757 (La.1973); *State v. DiVincenti*, 93 So.2d 676 (La.1957). The record reveals defense counsel was appointed to this matter approximately five weeks prior to trial. However, the trial court's reasons for denying a continuance indicate that counsel was not using the available resources, i.e., the investigator was sitting in jail with Defendant instead of assisting counsel, to prepare for trial. Given that counsel had more than one month to prepare for trial and was not using that time and the available resources wisely, we find that the trial court did not abuse its discretion in denying the motion for continuance. Thus, this assignment of error is without merit.

### DECREE

With respect to the offenses committed against M.L., AB., and R.L., we affirm Defendant's convictions and sentences. Because of insufficiency of the evidence, we vacate Defendant's conviction of aggravated rape of C.C. and enter a judgment of guilty for the crime of forcible rape. We remand the matter for sentencing on this conviction.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND REMANDED.**

35

**STATE OF LOUISIANA**

**VERSUS**

**D. T.**

**Roy, Judge dissents and assigns written reasons:**

While the prevailing jurisprudence appears to suggest that an interval of five weeks between the time of assignment of counsel to a case and the start of trial is normally insufficient to vacate a conviction based on a trial court's denial of a defense motion for continuance, I do not believe that the particular facts of this case support such a result. In the Defendant's case, he faced prosecution which could result in four terms of life imprisonment, without parole.

After only three weeks as defense counsel, Defendant's attorney timely moved for a continuance based on a completed review of the Defendant's case file, the admissions of prior counsel that he had failed to conclude an adequate investigation of potentially-relevant matters and the need to pursue and subpoena

additional witnesses.  With only two weeks remaining until trial, the trial court denied the Defendant's motion for continuance and counsel had no alternative but to proceed as best she could.

Given the complex nature of this case, with multiple alleged victims, a time span listed for the offenses that covered some thirty years, the apparently chaotic nature of the familial relationship involved, the short time for trial preparation and the timely application for continuance, as well as the relatively minor inconvenience which would have resulted from a short delay in the start of trial, I would find that the trial court erred in denying  the Defendant's motion for continuance.

Every citizen in this state is entitled, by law, to an adequate defense, regardless of the nature of the charged offenses or understandable  desire of the State to bring the case to trial as soon as possible.  In  matters where a criminal defendant is faced with the prospect of imprisonment for the remainder of his natural life, it is paramount that  the trial and appellate courts insure that  he receives every protection afforded by the Louisiana Constitution and full access to any and all resources necessary to adequately defend himself.

Clearly, the facts of this case indicate that there was, at a minimum, a rush to judgment in the matter, which transpired over the strenuous objections of

defense counsel and for no overriding reason.  A reasonable delay in the matter would have been, at worst, a minor inconvenience for the State, but could have made the difference between conviction and acquittal on these most serious charges for the Defendant.  Reinforcing the significance of permitting adequate preparation in such cases, I note that the majority of this court, on review, found that the State had introduced insufficient evidence to convict the Defendant of the charged offense, regarding at least one of the alleged victims.

Accordingly, I would vacate the Defendant's convictions and sentences and remand this matter for a new trial, at which the defense would be assured of adequate time for preparation, funds for expert witnesses and time for review of their evaluations and resources for a thorough investigation and interview of witnesses in the case.

For these reasons, I respectfully dissent.